HUGHES v. KNOTT.

(Filed April 18, 1905).

*Sales—Delivery F. O. B. Cars—Time of Payment—Executory Contract—Ability to Pay—Tender—Waiver—Custom.*

1. Where a contract for the purchase of a lot of tobacco provided "that plaintiffs would take and pay for said tobacco on July 1st, and that defendants prize it on or before July 1st, all of said tobacco to be delivered f. o. b. cars Raleigh, and there was no provision naming the carrier, or the point of destination, held, it was the duty of the plaintiffs to give these shipping directions before they could demand performance.

2. In a contract for the sale of personal property, nothing being said as to the time of payment, the price must be paid either before or concurrently with the passing of the title.

3. If a party to an executory contract is in a condition to demand performance by being ready and able at the time and place, and the other party refuses to perform his part, an offer is not necessary.

4. Testimony tending to show the general custom in the tobacco trade to accept checks in payment for tobacco is competent, not for the purpose of varying the contract but as interpreting its terms.

5. Where plaintiff went to defendants' place of business during business hours for the purpose of paying for the tobacco and had available funds for that purpose, either in money or checks, and the defendants were not at their place of business, the plaintiff is entitled to a reasonable time to convert his funds into currency.

ACTION by W. T. Hughes and another against R. H. Knott and another, heard by *Judge B. F. Long* and a jury at the September Term, 1904, of the Superior Court of WAKE County. From a judgment in favor of the plaintiffs, the defendants appealed.

The plaintiffs sue for the possession of a lot of tobacco

described in the complaint. They allege that they are the owners and entitled to the immediate possession thereof, setting forth the facts upon which their claim of ownership is based. The defendants deny the plaintiffs' title. It appeared that on the 20th day of January, 1904, the plaintiffs and defendants entered into a contract in writing by the terms of which the plaintiffs "bought of the defendants two lots or parcels of scrap tobacco now in their warehouse in the city of Raleigh upon the following terms and conditions". Plaintiffs agree "that they will pay for first lot of bright scrap of about 25,000 pounds four cents less three per cent and for the second lot known as pickings and dark scrap one dollar per hundred weight." It was agreed that plaintiffs "will take and pay for said tobacco on July 1, 1904, provided the same shall conform to sample as hereinafter provided." It was agreed that defendants should pick and prize the tobacco on or before July 1, 1904. "All of said tobacco to be sound and delivered f. o. b. cars Raleigh." There were other provisions in the contract in regard to settling any dispute which might arise in regard to the quality etc. of the tobacco. It was further provided, "said Hughes & Co. further agree to take all the tobacco of the same grade and quality as said sample which Knott & Williamson may purchase on or before July 1, 1904, not to exceed 45,000 pounds upon the terms and conditions herein set forth. And said Knott & Williamson agree that said W. T. Hughes & Co. shall have all the said scraps up to said sample up to July 1, 1904, not to exceed 45,000 pounds." It is admitted in the pleadings and testimony that on June 29, 1904, the tobacco described in the contract was picked and prized by defendants and accepted by plaintiffs, an invoice therefor being delivered to them by the defendants. Plaintiff Hughes testified that he came to Raleigh on June 29, went to defendants' warehouse, saw the tobacco and accepted it. This was on Wednesday. That he told defendants to put

it in the depot and get the bill of lading and that he would return to Raleigh on Saturday or Monday and pay for it. Told them that he was very busy. Mr. Williamson asked about exchange on check; witness said that if there was any he would pay it. Witness said he would come Saturday or Monday. Mr. Williamson said "alright." This was in his warehouse. Hughes testified that after the agreement Williamson said, "Be here on time," and witness replied "I will do it." That he came from his home in Louisburg to Raleigh on Monday, July 4, went immediately to defendants' warehouse and it was closed. Endeavored to find them; could not find Mr. Williamson; found defendant Knott that night by going to his house. Told him that he was there to pay for tobacco—was prepared to do so—would not ask him to take check but would pay spot cash. Knott replied that witness had broken the contract by not being here on the first day of July. Did not see Williamson that day at all; saw him afterwards, he said they had decided to keep the tobacco, that witness had broken his contract by not being present on July 1. Hughes testified that the plaintiffs were ready, willing and able to pay for the tobacco on June 29th and on July 4, 1904; that he had checks on Norfolk National Bank and a large amount of collateral with him on July 4, so that when he went to the bank he was prepared to have check cashed. He also testified that it was agreed between Williamson and himself on June 29 that defendants were to put tobacco in depot by Monday, that he wanted it in depot before he paid for it. Defendant Williamson testified that plaintiff Hughes was at his warehouse on June 29th, and accepted the tobacco; that plaintiff did not say when he would take it. When he got ready to go he said that he would be up here between then and Monday and pay for the tobacco. Witness said to him that there was another party interested in it and he would advise him to attend to the matter according to contract. He denied

agreeing with plaintiff to wait until Monday for payment. There was other testimony regarding the alleged extension of time of payment to July 4, 1904. In view of His Honor's charge to the jury, it is not necessary to set it forth. From a judgment for plaintiffs defendants appealed.

*Armistead Jones & Son* and *W. H. Ruffin,* for the plaintiffs.

*B. M. Gatling* and *Pou & Fuller* for the defendants.

CONNOR, J., after stating the facts: The learned judge instructed the jury to answer the first issue, which was directed to the question of title, in the affirmative. The exception to this instruction presents the question for our decision. His Honor was of opinion that, by the terms of the contract and the conduct of the parties, the title to the property passed; that before the defendants could demand payment they were required to deliver the tobacco free on board cars in Raleigh; he therefore instructed the jury that "the obligation of the defendants under the contract was to place the goods on board cars Raleigh, N. C. and immediately their right to demand pay for the goods in cash accrued to them, and not until then. The contract as construed by the court means that the defendants were entitled to cash as per contract for the goods upon delivery f. o. b. cars Raleigh. As the defendants admit that they never delivered the goods f. o. b. Raleigh, the court construes the contract to be, under that state of facts, that the defendants were guilty of a breach of the contract."

The defendants insist that in the absence of any provision in the contract naming the carrier to which the tobacco was to be delivered or the point to be shipped, it was the duty of the plaintiffs to give directions to the defendants in both respects before they could demand performance.

In *Armitage v. Insole,* 14 Ad. & Ell. (68 E. C. L. ) 727,

the plaintiffs sued for breach of contract by the defendants "to deliver free on board" a quantity of coal. The defendants demurred for that it did not appear that the plaintiffs named the ship or the place of destination. *Coleridge J.,* said: "When circumstances, left uncertain by the contract, are of such a nature that one party cannot perform his part of the contract until they are fixed, the other party insisting on the contract ought to fix those particulars. Here, both time and place should have been fixed by the plaintiffs, but certainly place." *Wightman, J.,* said: "I should say the agreement being silent as to time, that it must be at the option of the plaintiffs. But, however that may be, the defendant clearly cannot give the coal free on board until they know the ship and at what port it is to discharge. Whatever, therefore, the construction of the agreement may be as to time, the plaintiff must fail for want of averring that he was ready and willing to name a ship."

In *Dwight v. Eckhert,* 117 Pa. St., 490, 508, *Clark, J.,* says: "It is a well established principle of law that in a contract for sale and delivery of goods 'free on board vessel' the seller is under no obligation to act until the buyer names the ship to which the delivery is to be made; for until he knows that, the seller could not put the goods on board." Benjamin on Sales, 699; Mechem on Sales, Sec. 1130.

The plaintiffs rely upon *Henderson v. Bessent,* 68 N. C., 223. We find nothing said therein which conflicts with the authorities cited. It was there held that under the contract it was the duty of the defendant to have certain tobacco manufactured by the day named. So, in our case, it was the duty of the defendants to have the tobacco prized and ready for delivery on July 1, 1904, and it was the duty of the plaintiffs to be ready "to take and pay for said tobacco" and notify the defendants to what carrier it should be delivered and to what place they desired it shipped. In the absence of any directions in either respect, we are unable

to see how the defendants could be in default. It is conceded that the evidence does not show that any shipping directions were given. It may be' that in fact such directions were given. As the cause must be sent back for a· new trial, we deem it proper to express an opinion in regard to the other questions discussed before us.

We do not concur in the construction put upon the contract by the Judge below. Whatever views we may entertain in regard to the rights acquired and the duties imposed by the terms of the contract of January 20, 1904, we are clearly of the opinion that upon the admissions in the pleadings and the testimony of both parties, the subject matter of the contract (the tobacco) was designated, set apart and on June 29, 1904, accepted by the plaintiffs as conforming to the contract in all respects. It was prized into 45 hogsheads, weighed and numbered. An invoice was made and delivered to the plaintiffs, nothing more was to be done in that respect. There can be no question that if the plaintiffs had been in Raleigh on July 1 and tendered the price thereof in money, they would have been entitled to have. immediate possession, that· is, to demand its delivery f. o. b. on cars, carrier and destination being fixed by them. What then were the relative rights and duties of the parties in regard to the order of payment and delivery? The conditions prescribed by the two first rules laid down by Mr. Benjamin (Sales 318) had been met and complied with. The third rule, upon compliance with which both the title and· right of possession vest, is: "When the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends,. the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered in the possession of the buyer." It is immaterial here whether we so construe the contract that payment of the price was a condition precedent or concurrent. It is well settled by

abundant authority that, in a contract for the sale of personal property nothing being said as to the time of payment, the price must be paid either before or concurrently with the passing of the title. Mechem, *supra*, 540; *Bloxam v. Sanders*, 3 B .& C. (10 E C. L.) 477; *Scudder v. Brodbury*, 106 M. & S. 427. *Battle*, J. in *Grandy v. McCleese*, 47 N. C., 142, construing a contract for sale of corn in which no time was fixed for payment, said: "The legal effect of it was to bind the parties to the performance of concurrent acts. The plaintiff was to send for the corn and to pay for it upon delivery and the defendant was to deliver it upon receiving payment. Neither party could demand performance by the other without the allegation and proof of his own readiness and ability to perform his part of the agreement." The status of the parties is well stated by *Pearson*, J. in *Grandy v. Small*, 48 N. C., 10: "The acts to be done by the parties under this contract were concurrent. The plaintiff was bound to pay the money on delivery of the corn. His doing so was a condition precedent to the right of action, and the question is whether there was anything to discharge him from its performance." The plaintiffs, recognizing this condition, say that they were discharged from the duty of paying on July 1, 1904, by an express contract with the defendants that payment should be postponed until July 4, 1904. This the defendants deny. This question should have been submitted to the jury. It is directly raised by the pleadings. If the plaintiffs had on July 1, 1904, tendered the price and it had been rejected and delivery of the tobacco refused, there can be no question that in view of the admitted facts the plaintiffs could have recovered the possession of the property upon tendering the price or upon refusal to deliver by showing readiness and ability to pay. Upon giving shipping directions they would have been entitled to demand its delivery f. o. b. on the cars at Raleigh. As no directions were given and this duty was imposed upon de-

fendants for the benefit of plaintiffs, they could waive it or, by failing to give them forfeit the right to demand performance in that respect. If the jury find with the plaintiffs in respect to the change of time for payment, they would have the same rights and duties on July 4, which by the original contract they had on July 1st. They say that on that day "Plaintiffs went to Raleigh, as agreed, ready, able, willing and prepared to take and pay for said tobacco, but the defendants failed and refused to deliver it." This averment is denied by the defendants and in this way the second controverted question of fact is presented by the pleadings. It should have been submitted to the jury. It is conceded that no tender of the price was made on July 4, 1904. It is further conceded that defendants, when plaintiff Hughes went to Knott's home on the night of July 4, the latter said "We were there in the warehouse on the first day of July and you did not come and we are holding the scrap." Defendants say in their answer that the only reason why they did not deliver the tobacco was that plaintiffs did not make any tender of the price on July 1st. The defendants by their refusal to deliver waived a tender.

"If a party to an executory contract is in a condition to demand performance by being ready and able at the time and place, and the other party refuses to perform his part, an offer is not necessary." *Grandy v. Small, supra; Blalock v. Clark,* 133 N. C., 306. There is a class of cases in which neither a tender nor an averment of readiness is necessary, as when before the day fixed for performance the party renders it impossible to perform on his part, as an agreement to marry on a day named if the defendant marries some one else before the day. The case before us does not fall within the principle upon which these cases are based. *Grandy v. McCleese, supra.* The defendants had the tobacco on July 4. The plaintiff Hughes testified that he came to Raleigh on July 4 ready and prepared to pay for the tobacco and that

he had a check on the Norfolk National Bank and ample collateral to secure the money from the bank here if demanded; that he did not ask the defendants to take his check but told Knott that he would get the money the next day and pay him; that he went to the defendants' warehouse during the day but failed to find them; that he did not find either of them until nine o'clock at night, when he found the defendant Knott at his home and told him that he was prepared to pay for the tobacco and would do so next morning. Whereupon Knott said that they had decided to keep it. He did not tender the check. If Knott had demanded the currency, the plaintiffs would have been compelled to pay it, but, as we have seen, the defendants waived the tender. Were the plaintiffs ready to comply with their part of the contract? We have held that testimony tending to show a custom among cotton dealers to accept checks in payment for cotton sold in large lots, was competent. The plaintiffs in this case offered to prove general custom in the tobacco trade in that respect. Objection to it was sustained. As we have seen, the view which His Honor took of the case rendered this immaterial. While we do not intend to relax the well settled rule that where performance of a contract is a condition precedent to the plaintiff's right of action, he must allege and show either a tender or waiver etc., we are of the opinion that if the jury should find that there was an agreement to extend the time of payment to July 4 and it should appear that on that day plaintiff Hughes was here and went to the warehouse of defendants during business hours for the purpose of paying for the tobacco and had available funds for that purpose, either in money or checks, which he could have promptly converted into money, and the defendants were not at their place of business, that the plaintiff would be relieved of the duty of converting such checks into currency on that day and carrying the same about on his person until he could find the defendants. The

plaintiff Hughes testified that in the conversation on June 29 the defendant Williamson asked him about the exchange on the check, to which he said if there was any exchange he would pay it. This would indicate that it was understood between the parties that checks would be received in payment.

· Upon another trial the plaintiffs would be permitted to prove, if they can, such custom as alleged, not for the purpose of varying the contract, but as interpreting its terms. *Brown v. Atkinson,* 91 N. C., 389.

We have been unable to find any authority in regard to the question as to what would constitute readiness and ability under the circumstances testified to by the plaintiff Hughes. It would seem that if his view of the entire transaction is correct, he should have been allowed a reasonable time, after the refusal of the defendants, to deliver the tobacco, to convert his funds into currency, and if his funds were available for that purpose, the jury would be justified in finding that he was ready, able and willing, within the terms of the contract as modified by the conduct of the parties. All this, however, will be for the jury upon proper instructions by the court. For the errors pointed out there must be a

New Trial.