GEORGE E. GAYLORD v. M. E. McCOY ET AL.

(Filed 9 April, 1913.)

1. Deeds and Conveyances—Contracts to Convey Lands—Options—Consideration—Compliance.

An option for the sale of lands based upon a valuable consideration is an offer to sell which may not be withdrawn by the grantor before the expiration of the time provided in the option; and in order to constitute an acceptance, the optionee must not only indicate that he will accept, but he must also pay or tender the purchase price within the time limited, the option imposing this condition. *Winders v. Kenan, ante,* 628, cited and applied.

2. Same—Tender of Payment—Waiver.

Where the grantor of an option on lands given for a valuable consideration has refused to make a warranty deed according to the terms thereof, and by refusing to include certain lands embraced by his contract or pay off encumbrances he had agreed to pay, or to give bond for their payment as proposed by the optionee, a tender by the optionee of the purchase price within the period of time specified for the running of the option is unnecessary, and the refusal of the grantor to comply with the terms of the contract, in this manner, which he was obligated to perform, is a waiver of a legal tender of the purchase price;

.and the optionee, who has ever continued ready, able, and willing to pay, may enforce the contract according to its terms in his action thereon, and secure a proper deed upon the payment of the price agreed.

3. **Deeds and Conveyances—Contracts—Options—Tender of Deed— Description—Requisites.**

Where under an option to purchase land given for a valuable consideration the grantor tenders a deed which omits a part of the description of the lands embraced in the option, and important in identifying the lands contracted to be conveyed, the deed tendered is not a compliance with the terms of the option; and where by such omission a part of the lands agreed upon are excluded from the deed, an acceptance of the deed by the optionee would prevent him from claiming the lands omitted, and hence he is justified in refusing to accept the deed as not being in accordance with the contract of purchase.

4. **Deeds and Conveyances—Legal Tender—Currency—Waiver.**

· While it is necessary to constitute a legal tender for the purchase price of land upon demanding a deed therefor, that it be made according to the acts of Congress, specifying what is legal tender in such transactions, it is required that when the tender is made in money constituting a part of the common currency of the country and ordinarily passing as such, it should be objected to at the time on the ground that it is not legal tender; and in this case, expressions that the currency was not legal tender. and it appearing that the. grantor refused to deliver the deed for other reasons, were insufficient on the plea that tender had not been properly made.

APPEAL by defendants from *Bragaw, J.,* at September Special Term, 1912, of BRUNSWICK.

This is an action to compel specific performance of the following option executed by the defendants, which was duly probated and was registered 6 July, 1909:

"Know all men by these presents, that in consideration of the sum of four hundred dollars ($400) paid by George O. Gaylord, of Wilmington, State of North Carolina, to the undersigned parties, the receipt of which is hereby acknowledged, we, Mrs. M. E. McCoy, widow of the late L. C. McCoy, of Brunswick County, State.of North Carolina; C. L. McCoy and wife, Lutie McCoy, of Laurinburg, State of North Carolina; Charles F. McCoy, of Cameron, State of South Carolina, and

GAYLORD *v.* McCOY.

F. M. McCoy and wife, Rosa M. McCoy, of Wilmington, State of North Carolina, do hereby contract and agree with the said George O. Gaylord to sell and convey unto the said George O. Gaylord and his heirs and assigns all that certain tract or parcel of land situate, lying, and being in Northwest Township, Brunswick County, State of North Carolina, adjoining the lands of M. W. Murrell, B. T. Trimmer, Z. E. Murrell, the Metts estate, and lying on both sides of the Carolina Central Railroad, known as the L. C. McCoy place, and the same on which Mrs. M. E. McCoy resides at the present time; the said tract of land containing 1,500 acres, more or less, and lies on the waters of Mill Creek and near the waters of Hood's Creek, and is all of the land owned by Mrs. M. E. McCoy, C. L. McCoy and wife, Charles McCoy and wife, and F. M. McCoy and wife, in the county of Brunswick, State of North Carolina; and that we will execute and deliver to said George O. Gaylord and his heirs and assigns, at his or their request, on or before 3 November, 1909, a good and sufficient deed for the said lands, with full covenants and warranty, and free from all encumbrances: *Provided,* and upon condition, nevertheless, that the said George O. Gaylord, his heirs and assigns, pay to the undersigned parties, or their representatives or assigns, the sum of nine thousand dollars ($9,000), less whatever sum has been paid as an option on said land, and such sum or sums as it might be necessary to withhold for the payment of unpaid taxes and outstanding encumbrances on said land. It is understood and agreed that the said sale is to be made at the option of the said George O. Gaylord or his heirs or assigns, to be exercised on or before the said 3 November, 1909.

"And it is further understood and agreed that if the said George O. Gaylord and his heirs and assigns shall not demand of the undersigned parties the deed herein provided for, and tender payment as herein provided for, on or before 3 November, 1909, then this agreement to be null and void, and the undersigned parties are to be at liberty to dispose of the land to any other person or to use it as the undersigned parties may desire, in the same manner as if this contract had never been made; but, otherwise, this contract to remain in full force and effect.

"And it is furthermore understood and agreed that no timber is to be cut or removed from said land during the continuance of the option.

"The said Mrs. M. E. McCoy, C. L. McCoy and wife, Charles F. McCoy and wife, covenant with the said George O. Gaylord, his heirs and assigns, that they are seized of the above described premises in fee, and have the right to convey the same in fee simple, and that they will warrant said title to be free from defects and that the said title is hereby warranted to be free from defects.

"It is understood that should George O. Gaylord decide to purchase said tract of land, that from the same which is known as the L. C. McCoy graveyard, being near Mill Creek and on the Wilmington and Fayetteville Road, containing one-half acre, more or less, and what is inclosed by an iron fence, is excepted; also is excepted what is known as the Samuel Rowell graveyard, containing one-half acre, more or less, and on the edge of the right of way of the Carolina Central Railroad.

"And to the true and faithful performance of this agreement we do hereby bind ourselves and heirs, executors, administrators, and assigns, to the said George O. Gaylord and his heirs, executors, administrators, and assigns."

On 20 October, 1909, the plaintiff notified the defendants that he had decided to purchase the lands described in said option, and that he demanded a deed in accordance with its terms.

On 29 October, 1909, the defendants, through their attorney, prepared a deed which they tendered to the plaintiff, in which said deed there was omitted the following descriptive words which were in said option: "and is all of the land owned by Mrs. M. E. McCoy, C. L. McCoy and wife, Charles F. McCoy and wife, and F. M. McCoy and wife, in the county of Brunswick, State of North Carolina," and at the time of tendering said deed the defendants, through their attorney, wrote a letter to the plaintiff in which they said, among other things, that they tendered the deed in compliance with the terms of the option and demanded the balance due on the purchase price; that they would not settle the creditors' suit brought against

the plaintiff, F. M. McCoy, and others, as they did not have to do so in order to give a good title, and that in their opinion the paper-writing did not cover the 60 acres of land spoken of as the Anders place, and that they would not give a deed for the 60 acres that would cover the interest of F. M. McCoy, nor would they warrant the title to the 60 acres, and that F. M. McCoy would sign no deed covering his interest in the 60 acres.

On 1 November, 1909, the plaintiff replied to said letter of 29 October, stating that the proposition submitted in the letter of 29 October was not in accordance with the terms of said option, and that the deed tendered did not contain the full description of the land, and making the following demands: "I demand a warranty deed from your clients for the said land above described, free from all encumbrances, as provided in said contract; and the bearer, Mr. Turner, will tender you the purchase price, and you may deliver the deed to him. I am advised by counsel that I am entitled under this contract to a title free from all encumbrances; also that the suit of J. A. Taylor and others is a judgment creditors' bill, which, if the suit is decided adversely to the McCoys, will be a charge or encumbrance upon at least one-third of the land, and is in the nature of a *lis pendens;* and also that there is another suit which may be decided adversely, which must be provided for. You will understand that I am insisting on all judgments, mortgages, and other liens being canceled; but I am entirely willing, if there are any pending suits which amount to a *lis pendens,* to pay the money and take a good bond from your client, protecting me in such suit, in the event they are decided adversely to your client."

Said letter of 1 November, 1909, written by the plaintiff, was handed to the defendant's attorney by the attorney of the plaintiff, and at the same time the attorney of the plaintiff attempted to make a tender of the purchase money, and an account of what occurred at the time is stated by the defendant's attorney as follows: "On 1 November, Mr. Turner brought me certified check for $8,600, and said: 'I want to tender you, and want to know if you make the point that it is not cash?' I told him that F. M. McCoy was the only one who

161—44

had spoken to me. I presumed I represented all of the defendants, but if the others should say I was not authorized, I couldn't swear that I did represent them, and if, under the circumstances, you want me to waive it, I will do so. He said, 'No, I will get the cash.' I said, 'Very well; comply with the law.' Turner came back about 1 P. M. with a shot-bag in hand, and laid it on my table, with a letter written by George O. Gaylord, addressed to me, as attorney, dated 1 November, 1909, and said he wanted to tender me $8,600, and wanted me to count the money. I read the letter and began counting. The first package contained $500 and was of paper currency, some five-, some ten-, and some twenty-dollar bills. I counted the first package about four-fifths through, and turned to Turner and said: 'Mr. Turner, I want to call your attention to what you are offering me; here are some National bank notes, silver certificates, some Treasury notes, some gold certificates. I don't have to take this.' I remember one National bank note was for $5 and was signed by J. S. Armstrong, president of the Atlantic National Bank, and called Mr. Turner's attention to this; the amount counted $8,600. I then turned to my stenographer and dictated a letter to George O. Gaylord, dated 1 November, 1909.

"I testified before on the trial of this case. I testified that I told Turner I could not take the money. I said so later in a conversation with you and Judge Whedbee. I stated in that conversation that I did not say to Turner specifically in these terms, 'This is not legal tender,' because I knew if I did he would go to George Rountree, and Rountree would get him to get it up. I did tell him to go out and get the cash. What he (Turner) brought was what is usually called cash, and circulates as money or cash, but it was all bank notes, silver certificates, some Treasury notes, and some gold notes; some of the denomination of five, some ten, some twenty, some fifty, and some one hundred dollars. Most of it was small bills, and it took me about two and one-half hours to count it. The day he brought the money was the same day he brought the check, or said he had the check. I did not go through the form of offering Turner the original deed on its arrival. The McCoys

have never repudiated my acts in any way that I know of. C. L. McCoy subsequently came to my office, and we talked it over, and he never repudiated what I did. I wrote the letter of 29 October upon F. M. McCoy's employing me. I am of the opinion that I represented all of the defendants."

The letter dictated and sent to the plaintiff, of date 1 November, 1909, was as follows:

DEAR SIR:—I am in receipt of your letter of 1 November, 1909, addressed to me, relative to the purchase of the McCoy land under the option which you hold, executed some time ago, and, as I understand it, your demand is for a deed in strict conformity with your letter, which you state is a compliance with the terms of the option. I understand from your letter that you will accept no deed unless it is in strict accordance with your letter of 1 November, which I do not regard as in accordance with the option. Your demand therein necessarily has to be declined.

Mr. F. M. McCoy refuses to yield his interest in the 60-acre tract, and refuses to settle the judgments against him personally or the creditors' suit brought by J. A. Taylor and others. All other encumbrances will be removed, and the other parties, other than Mr. F. M. McCoy, are ready to warrant and defend their title to all interest they have in the property, but they do not feel that it is incumbent upon them, by law or by contract, to settle the judgment against F. M. McCoy, or the creditors' suit, which is really against F. M. McCoy. They feel that the demand in your letter is demanding more than you have a right to, under the option, and you having demanded this, they feel that they are justified in refusing your proposition.                              Yours truly,

The plaintiff offered in evidence records of the following judgments:

Hicks Company v. C. R. and F. M. McCoy, judgment for $28.26; judgment docketed 23 July, 1909.

J. H. Taylor v. F. M. McCoy, judgment for $194.50, with interest and costs; judgment docketed 23 July, 1909.

N. Jacobi Hardware Company v. F. M. McCoy, judgment for $44.13, with interest and costs; judgment docketed 1 July, 1909.

J. W. Brooks v. F. M. McCoy, judgment for $174.40, with interest and costs; docketed 16 February, 1909.

Sol Bear & Co. v. F. M. McCoy, judgment for $37.30; judgment docketed 24 October, 1907.

The plaintiff also offered in evidence the record of an action instituted in the Superior Court of Brunswick County on 18 October, 1909, by J. A. Taylor, J. W. Brooks, and others against the plaintiffs and the defendants, which is the creditors' suit referred to in the letter of the plaintiff of 1 November, and in the letter of defendants of 29 October.

The complaint in said action was filed on 26 October, 1909, and in it the land in the said paper-writing is described, and the purpose of the action was to set aside a deed executed by F. M. McCoy to H. H. Edwards, and of a deed executed by H. H. Edwards to C. L. McCoy, and to subject the interest of F. M. McCoy in the purchase price of said lands to the payment of the creditors named in said action, including the judgment creditors before referred to.

Said deed to H. H. Edwards purported to convey in fee all the interest of F. M. McCoy in said lands except his interest in the Anders land of 66 acres, and was registered in Brunswick County on 10 October, 1907; and the deed to C. L. McCoy purported to convey in fee the lands conveyed by the deed of F. M. McCoy, and was registered in Brunswick County, 7 April, 1907.

One of the principal facts in dispute between the plaintiff and the defendants upon the trial of this action was whether the Anders tract, sometimes referred to as 66 acres and at others as 60 acres, was embraced and included in the description in the option sued on.

The jury returned the following verdict:

1. Did the defendants execute the contract, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff tender the purchase money to the defendants, or their authorized agents, in accordance with terms of the complaint, before the option expired? Answer: Yes.

3. Did the defendants refuse to accept the tender as made and to execute a deed, according to the terms of the contract? Answer: Yes.

4. Was plaintiff ready, able, and willing at all times to pay the purchase price and perform his part of the contract? Answer: Yes.

5. Were the 66 acres, known as the Anders tract, embraced and included in the description contained in the contract? Answer: Yes.

6. Did F. M. McCoy, before or at the time of signing the option contract, inform the plaintiff or his agent that he had no interest in the McCoy lands, other than the 66 acres, or Anders land? Answer: No.

There is no exception to the findings upon the fifth and sixth issues, and as to the other issues, his Honor instructed the jury, if they believed the evidence, to answer the first, second, third, and fourth issues "Yes," and the defendants excepted.

Judgment was entered in favor of the plaintiff, and the defendants excepted and appealed.

*Rountree & Carr and W. P. M. Turner for plaintiff.*
*C. Ed. Taylor and E. K. Bryan for defendants.*

ALLEN, J. There are numerous exceptions in the record, which it is unnecessary to consider, as the rights of the parties can be determined upon facts not in dispute.

We have held in *Winders v. Kenan, ante,* 628:

1. That a contract like the one before us is an option, or offer to sell.

2. That being based on a valuable consideration, the makers did not have the right to withdraw the offer before the expiration of the time provided for, which in this case was 3 November, 1909.

3. That in order to constitute an acceptance of the offer in options like this, the optionee must not only indicate that he will accept, but he must also pay or tender the purchase price within the time limited.

GAYLORD *v.* McCoy.

Applying these principles, the determination of the appeal depends upon the settlement of two questions:

1. Was there a valid tender of the purchase price according to the terms of the option, prior to 3 November, 1909?

2. If not, did the defendants waive such tender?

We will reverse the order, and will first consider the second question.

"It is a general rule that when the tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused; that payment or performance will not be accepted" (*Hills v. Bank,* 103 U. S., 319); and, "If a party to an executory contract is in a condition to demand performance by being ready and able at the time and place, and the other party refuses to perform his part, an offer is not necessary." *Grandy v. Small,* 48 N. C., 10; *Blalock v. Clark,* 133 N. C., 306; *Hughes v. Knott,* 138 N. C., 112.

The option contract required the defendants, upon payment of the purchase price before 3 November, 1909, to convey all the lands described therein by "a good and sufficient deed with full covenants and warranty, and free from all encumbrances," and the jury has found that the plaintiff was at all times ready, willing, and able to perform the contract on his part, and that the Anders place of 66 acres is "embraced and included in the description contained in the contract."

Three judgments against F. M. McCoy were on the record, which were docketed prior to the registration of the option contract, and were a lien on his interest in the land.

Under these circumstances, the defendants, on 29 October, 1909, five days before the option expired, tendered the plaintiff a deed, which omitted in the description of the land the words in the option, "and is all of the land owned by Mrs. M. E. McCoy, C. L. McCoy and wife, Charles F. McCoy and wife, and F. M. McCoy and wife, in the county of Brunswick, State of North Carolina," and at the same time wrote the plaintiff that, in their opinion, the option did not cover the Anders place; that F. M. McCoy would not execute a deed covering his in-

terest in that place; that they would not pay the judgment against F. M. McCoy, and that they would not execute a deed covering the interest of F. M. McCoy in the Anders place, nor warrant the title to it.

This was a clear breach of the option contract on the part of the defendants, and a refusal to execute it according to its terms, which rendered a tender of the purchase money unnecessary.

The law does not require a vain and useless thing to be done, and what good could have been accomplished by offering to pay money for a deed conforming to the option, when the defendants, after advising with counsel, had declared most positively they would not make it?

It is true, it was held in *Gaylord v. McCoy,* 158 N. C., 325, that the land in the option was that included in the boundaries and under the designation of "the L. C. McCoy place," but it was not held that the words omitted from the deed tendered were not material, and, on the contrary, they were said to be words of description, and therefore important in identifying the lands.

It also appears that the words were left out of the deed because of the contention that the option did not cover the Anders place, and the deed being tendered as a compliance with the option and the defendants having written the plaintiff at the time of the tender of the deed that the Anders place was not included therein, an acceptance of the deed under these circumstances would have prevented the plaintiff from claiming the Anders place.

Nor do we think the letter of the plaintiff to the defendants of 1 November, 1909, changed the status of the parties.

In that letter he demanded a warranty deed free from encumbrances, which was according to the option. He also said that he was advised that the Taylor suit would be a charge or encumbrance on a part of the land, and that it must be provided for. He insisted that all liens on the land be canceled, and proposed that he should pay the purchase money and take from the defendants an indemnity bond as against pending suits.

The plaintiffs and the defendants were parties to the Taylor suit, and one of the purposes of the action was to subject a part of the purchase money to the payment of the creditors. A judgment subjecting the fund would have been binding on all parties, and a payment of the judgment would have discharged the plaintiff from the payment of the purchase price *pro tanto,* and he had the right to be protected against paying twice. If, however, this was not true, after this letter was written and on the same day, two days before the option expired, the defendants renewed their refusal to execute a deed conveying the interest of F. M. McCoy in the Anders place, and to satisfy the judgments against him.

Being, therefore, of opinion that the defendants have waived the tender of the purchase money, it is not necessary to consider the validity of the attempted tender on 1 November, 1909.

The authorities seem, however, to agree that contracts to pay money, unless otherwise provided therein, are solvable in money made a legal tender by acts of Congress, and that bank notes are not within the provisions of these acts, but that as they constitute a part of the common currency of the country and ordinarily pass as money, a tender in such notes is valid unless they are objected to at the time on the ground that they are not legal tender. Ency. U. S. S. C. R., vol. 9, pp. 325-7.

Accepting the statement of counsel for defendants, as we must do as the case is presented, it appears that while he used expressions that might have put the plaintiff's counsel on notice, he states candidly that he did not object to taking the money upon the specific ground that it was not legal tender, and that he refrained from doing so because he knew, if it was made, the legal tender would be procured, and he, at the time of the tender, wrote a letter to the plaintiff, in which he objected to making a deed on other grounds, and not because legal-tender money was not produced.

For the reasons stated, the judgment is affirmed.

No error.