CLARK, C. J, dissenting.
We think the defendant's motion for judgment as of nonsuit should have been denied. The offer to sell the fifty shares of stock in question for $10,000 was made by mail, which carried with it an implied invitation, nothing else appearing, to accept or reject the offer in like manner, that is, by mail. Patrick v. Bowman, 149 U.S. 411; 13 C. J 300; 6 R.C.L. 611. Where no time limit is fixed, it is generally understood that the offeree must accept within a reasonable time; and we think this necessarily means that he should have a reasonable time within which to accept, in the absence of any revocation by the offerer. Minn. St. L. R. Co. v. ColumbusRolling Mill Co., 119 U.S. 149; Lucas v. Western Union Tel. Co., 6 L.R.A (N.S.) 1016, and note; Litz v. Goosling, 21 L.R.A. 127, and note. However, this is not one of the mooted questions before us, as the plaintiff's letter of acceptance was forwarded by return mail, and defendant admits that he received it before selling his stock to another.
There is no controversy or difference of opinion between the *Page 651 
parties as to the general rules of law governing the subject of contracts by correspondence; but the defendant contends that the plaintiff's letter of 27 March was not an unconditional and unqualified acceptance of his offer. He says the terms were varied by the direction to draw draft with stock attached; and that (609) such was a condition precedent to plaintiff's acceptance. We think this construction is rather too technical, and might properly be characterized as "sticking in the bark." It is quite certain that if the plaintiff were seeking to avoid his agreement on this ground we would be disposed to hold against him. And if the contract be binding as to one of the parties, it is binding as to both. The defendant's offer was accepted absolutely, without condition, and this resulted in an executory contract, with mutuality of obligation and remedy. Howell v. Pate, 181 N.C. 117, and cases there cited.
The difficulty in the instant case arises out of the failure of the parties to distinguish between a condition which goes to the making of the contract and a suggestion relating only to its ultimate performance or execution. Of course, to consummate any kind of a contract there must be a meeting of the minds upon a given subject. An unaccepted offer is not a contract; and, as stated in a number of cases, an acceptance to be effectual must be identical with the offer and unconditional. 13 C. J 281. But in order for this subsequently intended direction or suggestion to invalidate the acceptance, it should amount to a qualification or condition imposed as a part of the acceptance itself. In other words, it must be construed in the case at bar as a qualified acceptance to the effect that "I will accept your offer; provided you attach stock to draft and draw on me here in Greensboro and advise me so that I can be looking out for same." It will be readily conceded, without debate, that if this latter meaning be the reasonable and natural interpretation of plaintiff's letter dated 27 March, then there was no contract, and the defendant's contention, based upon this assumption, is entirely correct. But, on the other hand, if a contrary purpose were intended, as apparently and evidently it was, and the parties so understood it, we must give effect to the most essential and controlling element of all executory contracts, to wit, the real understanding and intention of the parties. The suggestion or direction made by plaintiff to draw draft with stock attached was not an unusual or unexpected method by which the parties might reasonably have contemplated carrying out the contract; and this lends color to the conclusion that a compliance with the plaintiff's wish, hope, or expressed request, "just draw on me here with stock attached," was not intended as a condition precedent to his acceptance of the defendant's offer. It is *Page 652 
further conceded that the result would have been otherwise had this suggestion not been accompanied by a declaration of unqualified and unconditional acceptance. 39 Cyc. 1199, and cases cited in note.
There is no effort to circumvent or deny the well settled principle that an offer must be accepted in its exact terms in order that a contract should arise therefrom, and any attempt to impose (610) new conditions or terms in the acceptance, however slight, will ordinarily deprive it of any efficacy. Krentzerv. Lynch, 122 Wis. 474. But where the letter of acceptance contains a mere suggestion, or request, that payment be made in a certain way, and such request is not in form of a condition attached to the acceptance, it does not amount to an attempt to vary the terms of the offer to sell, and will not defeat an action in proper instances for specific performance, or one for a breach of the contract. CurtisLand Co. v. Interior Land Co., 137 Wis. 341; Turner v. McCormick,56 W. Va. 151.
In the last cited case, the Supreme Court of West Virginia makes the following general observations pertinent to the subject now in hand: "If a man says, `I accept your offer,' that makes a contract. It assents to all the terms of the offer. What more is necessary? There is a completeaggregatio mentium. The acceptance conforms to the offer in every particular. How can a mere request relating not to the making of the contract but to its performance be deemed to change it? Would the acceptor be permitted to excuse himself from performance on the ground of such request? No precedent of that kind has been found. They are all cases in which the proposer, desiring to escape from the consequences of his offer, because somebody else has proposed a higher price than the first asked, seeks to repudiate the transaction and sell to the other party. Property rights are sacred, and should be well guarded by the law; but, when a man has deliberately made a fair contract of sale, he ought not to be permitted to avoid it on the same flimsy pretext in order to avail himself of a better bargain. Time and place of payment, when not mentioned in an accepted offer, are fixed by law, and are matters of performance, carrying out the contract, a thing wholly distinct and separate from the making of the agreement. If, contemporaneously with or subsequent to the making of the contract, either party suggest, request, or propose a time, place, or mode of performance different from that agreed upon, that does not of itself effect such change, nor does it cause a breach, giving right of action or rescission to the other party. Swinger v. Hayman, 48 S.E. 839."
In Skinner v. Stone, 222 S.W. 360, a case practically on all-fours with the one at bar, the Supreme Court of Arkansas holds (as condensed and stated in the syllabus): "A suggestion in the acceptance *Page 653 
of an offer to sell real estate that the purchaser will take care of draft attached to deed sent to a specified bank does not make that method of payment a condition which will avoid the contract if not accepted, but the purchaser must be given the opportunity to pay in money if the seller require it."
In the note following this case, published in 11 A.L.R. 811, the reporter cites two of our own decisions in support (611) of the same position, to wit, Hughes v. Knott, 138 N.C. 105, and Blalock v. Clark, 137 N.C. 140.
The defendant relies on the case of Hall v. Jones, 164 N.C. 199, but we think there is a marked distinction between the facts of that case and those here presented. There the plaintiff Hall annexed to his acceptance the condition that the trade be consummated in fifteen or twenty days thereafter, and asked for a ratification of this change by the defendant Jones. This was not an acceptance in the terms of the offer; and, therefore, amounted to a rejection of it. Minn. St. L. R. Co. v. ColumbusRoller Mill Co., supra; National Bank v. Hall, 101 U.S. 43.
Our attention has been called to a number of cases in other jurisdictions, seemingly in support of a different position, but we think the conclusions we have reached, and stated above, is more in keeping with the real purpose and intention of the parties; and it is universally conceded that this should be the guiding star of construction in every case. See 39 Cyc. 1197, and cases collected in note.
Defendant further contends that the plaintiff should not be permitted to maintain this suit because, at the time in question, he was a stockholder and director in the Jefferson Standard Life Insurance Company, and, therefore, under the duty of disclosing to the defendant whatever information he may have had regarding the value of this stock.
There is a sharp conflict in the authorities elsewhere over the question as to whether the relations between a director or officer of a corporation, on the one hand, and the shareholders, on the other, are not of such a fiduciary relation as to make it the duty of the former to disclose the knowledge which he possesses affecting the value of the stock before purchasing same from a shareholder. An interesting and valuable discussion of this subject will be found in 14 A.C.J. 128; Shaw v. Cole Mfg. Co.,132 Tenn. 210; L.R.A., 1916 B, 706, and note; Dawson v. Nat. Life Ins. Co., 157 N.W. 929; L.R.A. 1916 E, 878; Strong v. Repide, 213 U.S. 419;53 L.Ed. 853. And in our own reports, see Besseliew v. Brown, 177 N.C. 65, and cases there cited, especially McIver v. Hardware Co., 144 N.C. 478. But we do not think the facts in the instant case call for a decision of this question at the present time. There is no evidence on the *Page 654 
record tending to show that the defendant had any less knowledge of the company's business, or the value of the stock, than the plaintiff. Hence, it does not now appear that any harm has resulted from this alleged circumstance, even if it be open to the defendant.
The judgment of nonsuit will be set aside, and the cause remanded for a new trial.
Reversed.