### J. H. McADEN v. R. F. CRAIG ET AL.

(Filed 8 January, 1943.)

**1. Contracts §§ 3, 4, 10—**

A contract results from an offer to sell for cash and notice of acceptance, duly communicated in the terms of the offer, and the payment of the money and the delivery of the property belong to the performance of the contract, to take place simultaneously or as concurrent acts.

**2. Contracts § 8—**

In arriving at the intention of parties to a contract, its purpose, the nature of the offer, the circumstances of its making and the objects in mind and the ends in view must be regarded, and words capable of more than one meaning are to be given that meaning it is apparent the parties intended them to have.

**3. Same—**

In respect of the manner of executing a contract, the general custom in the business or trade may be considered in arriving at the intention of the parties.

**4. Contracts §§ 10, 16, 20—**

Following the consummation of a contract, the plaintiff must show that he offered to perform his part of the agreement, or that such offer was rendered unnecessary by the refusal of the defendant to comply, before an action will lie, either for its breach or for specific performance.

**5. Estoppel § 6d—**

Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation is begun,

change his ground, and put his conduct upon another and different consideration, thus mending his hold.    He is estopped from so doing.

Schenck, J., dissenting.
Seawell, J., concurs in dissent.

Appeal by plaintiff from *Pless, J.,* at March Term, 1942, of Mecklenburg.

Civil action to recover damages for alleged breach of alleged contract to sell and deliver the capital stock of a corporation.

On 11 April, 1941, the defendant executed and delivered to the plaintiff the following written offer:

"Stanley, N. C. 4/11/41

"If you pay me $150,000.00 cash I will deliver you at any time in 30 days from date the entire capital stock—common and preferred—of Lola Mills, Inc. if then unsold.                         R. F. Craig."

There is evidence tending to show that on 28 April, the plaintiff went to Stanley to see the defendant and to accept his offer.    Finding him out and after waiting a while for his return, the plaintiff asked his son, Hubert Craig, to tell his father that he accepted his offer and would meet him the next day in Gastonia to close the transaction.    Hubert Craig communicated the plaintiff's acceptance to his father.    On the following day, the defendant wrote the plaintiff he was not in position to deliver the stock because of a prior commitment.

There was evidence, however, that the defendant's commitment was to his son Hubert, made on 29 April, without consideration, after receiving notice of the plaintiff's acceptance.    Even so, the defendant says, "I told him all along it had to be cash. . . . Now, McAden, don't come back here with any offers or propositions of any kind. . . . If you come back, you come with the cash and nothing but the cash."

At the close of plaintiff's evidence, judgment of nonsuit was entered as to the defendant, Hubert Craig, to which no exception was noted.

On the issue as to whether the defendant's offer had been accepted while still outstanding and according to its terms, the court first instructed the jury that if the plaintiff's notice of acceptance was communicated to the defendant by his son, Hubert, while the offer was still outstanding, "that would constitute an acceptance of the offer."

Later, the court instructed the jury as follows:

"The Court construes the proposal, Exhibit 1, to mean that the plaintiff could accept the same only by paying or tendering to the defendant $150,000 cash, which was a condition precedent necessary to be per-

formed by the plaintiff before any duty rested upon the defendant to assign the stock to him; and if you find, from the evidence, that the defendant did not, while the said offer was outstanding, pay or tender to the defendant $150,000 in cash, then the Court instructs you to answer the first issue No." Exception.

The issue of acceptance was answered in the negative, and from judgment thereon, the plaintiff appeals, assigning errors.

*Robinson & Jones for plaintiff, appellant.*
*Tillett & Campbell for defendant, appellee.*

STACY, C. J.   The defendant lives in Gaston County; the plaintiff in Mecklenburg.  On 11 April, 1941, the defendant made an offer in writing to deliver to the plaintiff, at any time within thirty days, the entire capital stock of Lola Mills, Inc., "if you pay me $150,000.00 cash," subject to prior sale in the meantime.   It is in evidence that within the time specified, to wit, on 28 April, and while the offer was still outstanding, the plaintiff accepted the offer, and so notified the defendant. On the day following, the defendant wrote the plaintiff that he did not feel obligated to deliver the stock because "On Thursday of last week I committed myself to another party.  I am, therefore, not in position to deliver the stock to you or your customer."   It turned out on the hearing, however, that the defendant had "committed" himself without consideration to his son Hubert on 29 April, after receiving the plaintiff's notice of acceptance.

The case, then, turns on whether the payment or tender of $150,000.00 in cash was essential to the acceptance of defendant's offer.   The defendant did not so understand his offer.   Neither did the plaintiff.   *Samonds v. Cloninger,* 189 N. C., 610, 127 S. E., 706; *Rucker v. Sanders,* 182 N. C., 607, 109 S. E., 857.   The first time this position was taken was when the defendant filed his answer.   The point seems to have been an afterthought, suggested, no doubt, by the pressure and exigencies of the case.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration.   He is not permitted thus to mend his hold.   He is estopped from doing it by a settled principle of law." *Railway Co. v. McCarthy,* 96 U. S., 258.

It was not within the contemplation of the parties that the plaintiff should first pay the money and then trust to the defendant to deliver the stock.   This would leave the plaintiff unprotected.   *Lennon v. Habit,* 216 N. C., 141, 4 S. E. (2d), 339.   The payment of the purchase price

and the delivery of the stock were to take place simultaneously or as concurrent acts. Such was the understanding of both parties. *Cole v. Fibre Co.,* 200 N. C., 484, 157 S. E., 857. The case is not far different from *Rucker v. Sanders, supra,* where, on facts in principle quite similar, it was held that a contract resulted from the notice of acceptance, duly communicated, and that the payment of the money belonged to the performance of the contract.

In *Skinner v. Stone,* 144 Ark., 353, 222 S. W., 360, 11 A. L. R., 808, the appellant, in response to an inquiry, wrote the appellee, "I will sell the land and timber, 120 acres, for $2,500 cash." The appellee replied by mail, "Your price . . . is rather high, but I am accepting your offer, to take $2,500 cash for this land . . . attach draft to deed and . . . I will take care of same." The Court held the acceptance to be unconditional, and the request to "attach draft to deed," etc., a mere suggestion to expedite the consummation of the agreement.

It is generally understood that where an offer to sell for cash is accepted, the payment of the money and the delivery of the property are to take place simultaneously or as concurrent acts. *Northwestern Iron Co. v. Meade,* 21 Wis., 474, 94 Am. Dec., 557; *Hughes v. Knott,* 138 N. C., 105, 50 S. E., 586, 3 Ann. Cas., 903; *Blalock v. Clark,* 133 N. C., 306, 45 S. E., 642; *S. c.,* 137 N. C., 140, 49 S. E., 88. Indeed, in respect of the manner of executing the contract, it has been held that the general custom in the business or trade may be considered in arriving at the intention of the parties. *Hughes v. Knott, supra;* Annotation, 11 A. L. R., 811.

It should be remembered we are here dealing with the acceptance of an offer, and not with the exercise of an option. *Johnson v. Ins. Co.,* 221 N. C., 441; *Gaylord v. McCoy,* 161 N. C., 685, 77 S. E., 959. The usual method of accepting an offer is by notice of acceptance communicated to the offerer. *Hall v. Jones,* 164 N. C., 199, 80 S. E., 228; Anson on Contracts, p. 22, *et seq.* It is true, the acceptance must be in the terms of the offer, but acceptance and performance are not to be confused. *Rucker v. Sanders, supra;* 12 Am. Jur., 537. The one deals with the making of the contract; the other with its execution. *Blalock v. Clark, supra.*

"An offer to buy or sell becomes a binding agreement when the person to whom the offer is made accepts it and communicates his acceptance." *Owens v. Wright,* 161 N. C., 127, 76 S. E., 735. Of course, following the consummation of a contract, the plaintiff must show that he offered to perform his part of the agreement, or that such offer was rendered unnecessary by the refusal of the defendant to comply, before an action will lie, either for its breach or for specific performance. *Northwestern*

*Iron Co. v. Meade, supra; Gaylord v. McCoy, supra.* But here the first issue was addressed solely to the matter of acceptance or the consummation of the contract.

In arriving at the expressed intent—the real purpose of every writing—regard must be had to the nature of the offer, the circumstances of its making, and the objects in mind or the end in view. *Simmons v. Groom,* 167 N. C., 271, 83 S. E., 471. "The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have." Beach on Modern Law Contracts, sec. 702; *Jones v. Casstevens, ante,* 411. This necessarily works a new trial in the instant case, as it follows, from what is said above, there was error in charging the jury that payment or tender of the purchase price was essential to the acceptance of the offer. Such payment or tender is not stipulated as a condition precedent to the acceptance of the offer. It was the understanding of the parties, according to their own interpretation, that this would belong to the performance of the contract, if and when consummated. *Cole v. Fibre Co., supra.* It is true, consummation and performance might have gone hand in hand, but it is not so nominated in the offer that consummation shall be by tender or payment of the purchase price.

For error in the charge, as indicated, the plaintiff is entitled to another hearing. It is so ordered.

New trial.

SCHENCK, J., dissenting: This is an action to recover damage for a breach of an alleged contract to sell and deliver the capital stock of the Lola Mills, Inc.

The plaintiff alleged that the defendants made an offer to him that they would deliver the entire capital stock of the Lola Mills, Inc., upon his paying to them the sum of $150,000.00, and that he, the plaintiff, put himself in a position to make the payment of the amount to the defendants in accord with the offer and accepted the offer and thereby consummated the contract of sale and delivery, and thereafter the defendants breached said contract by giving notice that they would not deliver the stock, thereby making the payment or tender of said amount an idle and useless ceremony. *Samonds v. Cloninger,* 189 N. C., 610, 127 S. E., 706.

The defendants in answer admit that R. F. Craig made to the plaintiff an offer to sell and deliver to him the capital stock of the Lola Mills, Inc., upon the payment by plaintiff to him of $150,000.00 cash, but deny that the plaintiff ever put himself in a position to accept and comply with the conditions of such offer, and aver that no payment or tender of

McADEN v. CRAIG.

the $150,000.00 was ever made to R. F. Craig, and that no waiver of
such payment or tender was ever made by him and that there was no
consummation of a contract to sell and deliver the capital stock of the
Lola Mills, Inc., and consequently no breach of such contract.

At the conclusion of the plaintiff's evidence a motion for a judgment
as in case of nonsuit was allowed as to the defendant Hubert Craig, to
which no exception was lodged.

The case as it related to the defendant R. F. Craig was submitted to
the jury upon four issues, the first of which read: "Did the plaintiff,
while the offer set forth in Plaintiff's Exhibit No. 1 was outstanding,
accept same, in accordance with its terms, as alleged?"  The first issue
was answered in the negative, and the remaining issues left unanswered.

The offer (Plaintiff's Exhibit No. 1) made by the defendant to the
plaintiff is in the following language:

"STANLEY, N. C., 4/11/41.
"If you pay me $150,000.00 cash I will deliver you at any time in
30 days from date the entire capital stock—common and preferred—of
the Lola Mills, Inc., if then unsold.          R. F. CRAIG."

The $150,000.00 cash was never paid or tendered to the defendant by
the plaintiff.  The plaintiff, however, contends that he consummated the
contract of sale and delivery by notifying the defendant that he accepted
the defendant's offer, and that the defendant waived the necessity of his
making the payment or of making a tender thereof to the defendant by
notifying the plaintiff that he, the defendant, would not deliver the stock
to the plaintiff even if payment was tendered or made.

Since the offer clearly calls for the payment of cash and since it is
admitted that no payment nor tender of cash was made, and since the
plaintiff relies upon a waiver of such payment or tender, the case poses
the sole question: Was there sufficient evidence to be submitted to the
jury upon the issue of waiver of payment or tender thereof?  I am of
the opinion that there was not.

The plaintiff's testimony is to the effect that on 28 April, 1941, he
went to the office of the defendant at Stanley with the view of notifying
defendant of his acceptance of defendant's offer, and finding the defend-
ant R. F. Craig absent, plaintiff told defendant's son, Hubert Craig, that
he came to Stanley to accept his father's offer to deliver the stock of the
Lola Mills, Inc., that plaintiff asked Hubert Craig to convey this infor-
mation to R. F. Craig; that at that time the plaintiff made no payment
or tender of payment of $150,000.00, and, while he did not then have
that much cash or credit in the banks, he could get it from his clients;

that on the next day, 29 April, 1941, Hubert Craig delivered the message of the plaintiff to his father, R. F. Craig, in Gastonia; that up until 29 April, 1941, the defendant had done nothing to indicate a withdrawal or cancellation of his offer to deliver the stock upon the payment of the cash; and, also, on 29 April, 1941, at Gastonia, Hubert Craig delivered to the plaintiff a letter from his father, the defendant, notifying the plaintiff of his withdrawal of his offer of 11 April, 1941; that this was the first notice, or even intimation, given by the defendant of any withdrawal or cancellation of his offer.

The letter of the defendant to the plaintiff dated 29 April, 1941, relied upon by the plaintiff as a waiver of the payment or tender of the cash, contained the following: "On Thursday of last week I committed myself to another party. I am, therefore, not in position to deliver the stock to you or your customer. You will also recall that I told you, in the presence of Mr. Powell, I would not give an option, that I wanted to be free to do as I pleased. I, therefore, do not feel I am under any obligation to you." This is a definite notice from the defendant to the plaintiff of defendant's withdrawal or cancellation of his offer, and such being the case, if the plaintiff received the letter after his alleged acceptance of the offer, such acceptance was not valid because the payment or tender of the cash was still a requisite thereof; on the other hand, if the plaintiff received the letter before his alleged acceptance of the offer, it could avail the plaintiff nothing, since the letter withdrew and canceled the offer, and such alleged acceptance came too late.

The offer being one given without consideration and not under seal was revocable at the will of the offerer at any time before acceptance or compliance therewith by the offeree; and, since on 29 April, 1941, there had been no valid acceptance of the offer as made, the defendant was at liberty to withdraw or cancel his offer on that date, which he did. *Insurance Co. v. Moize,* 175 N. C., 344, 95 S. E., 552.

The defendant having exercised his right to withdraw or cancel his offer before any valid acceptance thereof was made by the plaintiff, the plaintiff's action, in my opinion, should fail.

SEAWELL, J., concurs in dissent.