(100 South. 217)

## J. H. HAMLEN & SON, Inc., v. ROSENGRANT. (1 Div. 320.)

(Supreme Court of Alabama. April 24, 1924.)

**1. Evidence** ⟨key⟩16—Court judicially knows meaning of "f. o. b. cars."

Court judicially knows that seller's agreement to deliver "f. o. b. cars at Mobile" means delivery on cars at Mobile without expense to buyer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, F. O. B.]

**2. Sales** ⟨key⟩83—Seller held under no duty to ship unless buyer furnished shipping instructions and cars.

Though ordinarily seller's agreement to deliver "f. o. b. cars" puts burden of procuring cars on seller, where no time was fixed for delivery, but correspondence showed that seller was to ship on buyer's shipping instructions, as buyer could from time to time procure cars, *held*, that seller was under no obligation to act until buyer gave instructions and procured cars.

**3. Sales** ⟨key⟩418(4)—Buyer held entitled to nominal damages only where goods have no market value.

Where goods have no market value, buyer is not entitled to more than nominal damages for seller's breach, burden being on buyer to prove damages.

**4. Sales** ⟨key⟩418(2)—In absence of shipping instructions from buyer, etc., seller held not in default.

Where shipment was to be made when buyer furnished shipping instructions and cars, *held* that, in absence of arrangements for cars and instructions, seller could not be put in default so as to fix time for measuring damages by failure to answer buyer's demand for shipment.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action by J. H. Hamlen & Son, Incorporated, against George M. Rosengrant, for damages for breach of contract. From a judgment awarding nominal damages, plaintiff appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

The letter of plaintiff to defendant, dated October 2, 1917, is as follows:

───────────

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Portland, Maine, October 2, 1917.

"Mr. G. M. Rosengrant, Mobile, Alabama— Dear Sir: We are in receipt of your two messages, one of September 29, and the other of October 1, (see inclosed copies), and we have wired you this morning in answer: 'Will take staves per correspondence accepting your regular standard French claret inspection.' We now understand that we have definitely closed with you for 100,000 36″ French White Oak claret staves, of your usual inspection, for French claret staves, but at least 70% shall be prime staves, and 30% good, merchantable seconds, at the price of $130 per thousand pieces, delivered f. o. b. cars Mobile; these staves when shipped to be dotted with two red dots, and bundled, we paying for the expense of bundling; the above staves to be well seasoned. In explanation of our telegram of yesterday, in reference to allowing Mr. Benton to examine the staves, we had no idea that he would go into a strict inspection, but now that we have accepted your regular inspection this will be unnecessary. We are now awaiting a reply from our New York office in reference to the shipment of these staves, and hope to be able to forward them promptly. When you have further quantities of 36″ or 42″ white oak or 42″ red oak French claret staves to offer, please advise us.

"Yours truly,
"J. H. Hamlen & Son,
"[Signed] G. M. Thomas."

The complaint alleges the reduction of the number of staves to 50,000.

Harry T. Smith & Caffey, of Mobile, for appellant.

The contract fixed no time for performance, so that time was never of the essence of the contract. Elliott v. Howison, 146 Ala. 568, 40 South. 1018; McFadden v. Henderson, 128 Ala. 221, 29 South. 640; Ackley v. Hunter-Benn, 166 Ala. 295, 51 South. 964; Lowy v. Rosengrant, 196 Ala. 337, 71 South. 439. Time not being of the essence, the contract could not be rescinded or treated as abandoned by either party without first giving the other notice and a reasonable opportunity thereafter to perform. Authorities supra; Hennessy v. Bacon, 137 U. S. 78, 11 Sup. Ct. 17, 34 L. Ed. 605. The failure to make any reply to the demand within a reasonable time was a refusal to comply. Higgins v. Emmons, 5 Conn. 76, 13 Am. Dec. 41; Kyle v. Hoyle, 6 Mo. 526; Craig v. Pierson Lbr. Co., 179 Ala. 535, 60 South. 838; Summers v. Hibbard, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872; 25 Cyc. 637. And the measure of damages is the difference between the contract price at a reasonable time for delivery after June 3, 1919, or at any event at a reasonable time after September 5, 1919. Authorities ubi supra. And it was reversible error for the court to charge the jury that the contract was only broken on November 2, 1920. Ellis v. Casey & Co., 4 Ala. App. 518, 58 South. 724; 11 Michie's Ala. Dig. (Sales) 3320.

R. H. & R. M. Smith, of Mobile, for appellee.

A contract includes all provisions within the contemplation of the parties when the contract was entered into. 13 C. J. 271, 558; 6 R. C. L. 856; Montgomery Enterprise v. Empire Theatre, 204 Ala. 566, 86 South. 885, 19 A. L. R. 987; Robinson v. Bullock, 58 Ala. 618. Where contract provides for delivery f. o. b. cars at point of shipment, and the contract does not name the carrier or the point of destination, it is the duty of a purchaser to give the route and destination before he can demand performances by the seller. The giving of shipping instructions is a condition precedent. Sterne v. Bay State Milling Co., 178 N. C. 479, 101 S. E. 21; Hughes v. Knott, 138 N. C. 105, 50 S. E. 586, 3 Ann. Cas. 903; Wiggin v. Lumber Co., 79 W. Va. 651, 91 S. E. 532; 35 Cyc. 166; 23 R. C. L. pp. 1366, 1415; 1 C. J. 981; Railway Co. v. Iron Co., 126 Ill. 294, 18 N. E. 735; Cox v. Dalmas, 99 Cal. 104, 33 Pac. 836. The demand must conform to the terms of the contract. 13 C. J. 662; Newburn v. Hyde, 132 Iowa, 88, 107 N. W. 604. To constitute a refusal, there must be a distinct, absolute refusal to perform the promise, which must be treated and acted upon as such by the party to whom the promise was made. Steele By-Products Co. v. McGee & Cowart, 19 Ala. App. 29, 94 South. 268; 35 Cyc. 167. Mere failure to reply to a letter requesting shipment, or inquiring about shipment, is not a refusal to ship. Wiggin v. Lumber Co., supra; 13 C. J. 662. If the contract is not sought to be carried into effect within a reasonable period, it is deemed to be dissolved and abandoned by mutual consent. Dowling-Martin Gro. Co. v. Lysle Milling Co., 203 Ala. 491, 83 South. 486; 39 Cyc. 1353; 9 Cyc. 766.

SAYRE, J. Plaintiff, appellant, declared as for a breach of contract whereby, in substance, defendant agreed to sell and plaintiff to buy 50,000 claret staves at $130 per thousand pieces, f. o. b. cars at Mobile. Of these 12,000 were delivered and paid for. Plaintiff sought damages for a failure to deliver the rest, 38,000. Under the court's instruction there was a verdict for plaintiff, and its damages were assessed at 1 cent. Plaintiff appeals.

Plaintiff did business at Portland, Me.; defendant at Mobile, in this state. The parties reached agreement after an interchange of letters and telegrams too numerous to be repeated. Plaintiff's understanding and statement of the contract appears in its letter of October 2, 1917. The requirement as to bundling the staves as afterwards modified, and is now of no importance.

[1, 2] It will be noted that the staves were to be delivered "f. o. b. cars at Mobile." The court knows judicially that the quoted stipu-

lation meant that the staves were to be delivered on cars at Mobile without expense to plaintiff. Sheffield Furnace Co. v. Hull Coal & Coke Co., 101 Ala. 446, 14 South. 672. And, ordinarily, it may be conceded, this stipulation puts upon the seller the burden of procuring the cars in which to make shipment. Elliott v. Howison, 146 Ala. 590, 40 South. 1018. But this obligation rests upon an implication common to all contracts in the absence of express stipulation to the contrary. The reason for this implication is thus stated in John O'Brien Lumber Co. v. Wilkinson, 117 Wis. 468, 94 N. W. 337:

"The general rule is that one who undertakes to accomplish a certain result, by necessary implication agrees to supply all means necessary to such result,"

—and the reason of the ordinary rule as between buyer and seller in the case of contracts to sell "f. o. b. cars" is thus stated:

"Both [meaning cars and the subject of sale] are alike in the open market, as much at the command of one as another, and the obtaining of each is equally essential to the accomplishment of the result."

But the following language of the court is to be observed and is peculiarly apt to the circumstances of this case to be presently stated:

"This general rule is subject to the qualification that, if any step toward such result is necessarily dependent upon the doing of any act or supplying of any facilities wholly under the control of the other party, the latter impliedly undertakes that such act shall be done or such facilities supplied, for otherwise he would occupy the absurd position of insisting that the contract absolutely bound one party to do that which the other could at will render impossible"—citing cases English and American.

No time was fixed for delivery; but the correspondence between the parties by wire and post, what they said and did in the partial performance of the contract (this shown also by correspondence), and the conditions obtaining at the time and affecting all transportation (these brought about by our preparations for the war then waging in Europe, the same being matters of common knowledge)—these evidential facts point without contradiction or adverse inference to the conclusion that the mutual understanding and intention of the parties was that deliveries were to be made on cars at Mobile as plaintiff should be able from time to time to procure from officers of government permits for the use of cars, for so only could cars be had, and should furnish shipping instructions. Thus the case is brought within the reason of the well-established rule of law:

"That in a contract for the sale and delivery of goods, 'free on board' vessel, the seller is under no obligation to act, until the buyer names the ship to which the delivery is to be made; for until he knows that the seller could not put the goods on board." Vogt v. Schienebeck, 2 Ann. Cas. note on page 818.

It is also clear that deliveries were to depend upon plaintiff's ability to get space on vessels to France, for which market plaintiff was buying staves—at that time a matter of no little difficulty and uncertainty—and that payments were to be made as staves were shipped. October 18 and 20, 1917, two cars were delivered and shipped by rail to plaintiff's consignment at New York. The testimony of plaintiff's witness Thomas is that after the shipments stated above—

"owing to the difficulty in procuring railroad cars for shipments, the steamship people would not give space. It was impossible to procure space, although the plaintiff was constantly on the market for space and made every effort to procure space to move the staves involved in this suit, as well as a large quantity of other staves it had sold to its French customers under the same contract by which it had sold the staves involved in this suit. The plaintiff could get no space for the shipment of these staves, and this condition existed from October, 1917, through 1918 and a part of 1919."

However, on August 12, 1918, plaintiff informed defendant by wire that it had prospects of shipping a small cargo from Mobile, and wanted to know whether defendant was prepared to deliver the rest of the staves contracted for; but defendant made no answer. And thus the matter rested until June 3, 1919, when plaintiff wrote defendant, commenting on the latter's failure to answer its last letter, and said:

"We are not able and have never been able since the purchase from you of these staves to ship them and we let the matter drop until we should have positive freight engagements by which to lift the staves. We have now secured this opportunity and wish to know what steps you can take towards filling your contract."

This also went unanswered. And on September 5, 1919, plaintiff again wrote, demanding somewhat more peremptorily that defendant fill its contract by the delivery of the remaining 38,000 staves. This was followed October 27, 1920, by another of like tenor, which defendant answered November 2, 1920, denying, in effect, any obligation to make further deliveries.

[3] The trial court instructed the jury that this letter of November 2, 1920, constituted a breach of the contract, and directed that plaintiff's damages be assessed at the difference, if any, between the contract price of the staves and their market price on that date; but, there being evidence that there was no market for staves during November, nor any after July, 1920, the jury awarded nominal damages. Assuming the jury's acceptance of the evidence just stated, their verdict filled the measure of justice.

"If the goods have no value whatever, the buyer can never be entitled to more than nominal damages; and as the burden is on the buyer to prove his damages, if he fails to prove the market price, or some other appropriate measure of damages, his recovery is only nominal." 3 Williston on Contracts, § 1384.

[4] The complaint now is that the court erroneously fixed the date of breach. It is insisted that the contract between the parties was breached when plaintiff, June 3, 1919, stated, without response from defendant, its wish to know what defendant could do towards filling his contract, or, at worst, that there was a breach when, September 5, 1919, plaintiff demanded performance with like result.

There was no sale of specific staves. Defendant's engagement was merely to deliver a certain number of staves of a certain quality as defendant should make arrangements for their shipment. During the interval between October 20, 1917, and August 12, 1918, plaintiff made no suggestion that the contract was still pending, nor any demand for performance, until June 3, 1919. At that time the market price of claret staves was $400 to $450 the thousand. Whether by reason of this failure to assert the continued life of the contract, notwithstanding the state of abeyance—of suspended animation—into which it had fallen, there was such laches, such unreasonable delay on the part of plaintiff to demand performance, as constituted a waiver or abandonment of its right under the contract, was probably a question for the jury; but, assuming, in accordance with plaintiff's contention, as the trial court did assume, that on June 3, 1919, there was a subsisting obligation on the part of defendant, we are of opinion that the court correctly instructed the jury that the breach occurred when, November 2, 1920, defendant denied all such obligation; this for the reason that, in the absence of repudiation by defendant, plaintiff could only put defendant in default by making all necessary arrangements and giving necessary instructions for transportation. In the absence of such arrangements and instructions defendant would have been unable to make delivery according to the true intent and meaning of the contract—could not have shipped the staves, even if able to procure cars, without assuming a risk his contract did not require him to assume. Hughes v. Knott, 138 N. C. 105, 50 S. E. 586, 3 Ann. Cas. 903; Sterne v. Bay State Milling Co., 178 N. C. 479, 101 S. E. 21. If it had been necessary under the contract that the time of delivery only be fixed by plaintiff's demand, any demand which would have fairly put defendant on notice that performance was expected would have been sufficient to put defendant in default after the lapse of a reasonable time thereafter without delivery,

and so to fasten upon him the consequences of a breach. But the fixing of the time of delivery was not the only thing plaintiff had to do in order to put defendant under the duty to deliver; it was necessary that plaintiff get a permit for cars and give shipping instructions. This plaintiff did not do. We are therefore at the conclusion that the court committed no error, and that the judgment should be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.