Error.

P. C. RUCKER v. W. M. SANDERS.

(Filed 14 December, 1921.)

**1. Contracts—Offer of Sale—Acceptance—Correspondence—Mail—Reasonable Time.**

Where one desiring to purchase shares of stock of the other writes for an offer at the lowest price, a reply, by letter, making the offer implies that an acceptance by letter will be in time.

**2. Same—Acceptance of Terms of Offer—Method of Delivery and Payment.**

An unconditional acceptance of an offer for the sale of stock at a certain price and in accordance with its terms, by correspondence of the parties living at different towns, without stating the method of delivery and payment, does not relieve the owner of his liability for failing to deliver the stock, by a suggestion in the acceptance that the delivery and payment be made by draft on him with the shares attached.

**3. Same—Mutuality of Contract—Remedy.**

Where an offer to sell shares of stock is unconditionally accepted, leaving open the method by which the shares should be delivered to and paid for by the acceptor, the contract thus made is an executory one with mutuality of obligation and remedy.

**4. Same—Duty of Acceptor.**

A prompt acceptance by mail of an offer by mail to sell certain shares of stock at a certain price, without provision for the method of delivery and payment requires of the purchaser only that he act within a reasonable time in finally closing the transaction.

**5. Same—Intention—Agreement of Minds of Contracting Parties.**

The intention of the parties will control in determining whether an acceptance of an offer to sell shares of stock was identical with the terms of the offer, or created a condition not contemplated by the offerer, or upon which the minds of the contracting parties had not agreed; or was merely a suggestion as to how the stock should be delivered by the offerer and paid for by the acceptor.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Webb., J.,* at September Term, 1921, of GUILFORD.

Civil action to recover damages for an alleged breach of contract, growing out of the following negotiations:

On Wednesday, 24 March, 1920, the plaintiff, who resides in Greensboro, N. C., addressed a letter of inquiry to the defendant, who lives at Smithfield, N. C., asking what was the lowest price he would take for his stock in the Jefferson Standard Life Insurance Company. On Friday, the 26th, the defendant answered by mail, saying that he owned 50 shares of said stock, which he would sell for $10,000. On Saturday, 27 March, the plaintiff wrote the defendant as follows:

"Regarding your fifty shares of Jefferson Standard stock that you offer at $10,000, while this is the highest price I have heard of, I will accept it. Just draw on me here at Greensboro with your Jefferson Standard stock attached to the draft, and I will honor same. Please advise me that you have drawn so I will be looking out for the draft."

The following Monday, 29 March, the defendant replied, saying that he had disposed of his stock; whereupon, on 30 March, the plaintiff wired the defendant insisting that the stock be delivered in accordance with his offer.

There was a judgment of nonsuit upon the ground that no enforceable contract had been shown, and, from this ruling, the plaintiff appealed.

*Alfred S. Wylie and J. S. Duncan for plaintiff.*
*King, Sapp & King for defendant.*

STACY, J. We think the defendant's motion for judgment as of nonsuit should have been denied. The offer to sell the fifty shares of stock in question for $10,000 was made by mail, which carried with it an implied invitation, nothing else appearing, to accept or reject the offer in like manner, that is, by mail. *Patrick v. Bowman,* 149 U. S., 411; 13 C. J., 300; 6 R. C. L., 611. Where no time limit is fixed, it is generally understood that the offeree must accept within a reasonable time; and we think this necessarily means that he should have a reasonable time within which to accept, in the absence of any revocation by the offerer. *Minn. & St. L. R. Co. v. Columbus Rolling Mill Co.,* 119 U. S., 149; *Lucas v. Western Union Tel. Co.,* 6 L. R. A. (N. S.), 1016, and note; *Litz v. Goosling* 21 L. R. A., 127, and note. However, this is not one of the mooted questions before us, as the plaintiff's letter of acceptance was forwarded by return mail, and defendant admits that he received it before selling his stock to another.

There is no controversy or difference of opinion between the parties as to the general rules of law governing the subject of contracts by correspondence; but the defendant contends that the plaintiff's letter of 27 March was not an unconditional and unqualified acceptance of his

offer. He says the terms were varied by the direction to draw draft with stock attached; and that such was a condition precedent to plaintiff's acceptance. We think this construction is rather too technical, and might properly be characterized as "sticking in the bark." It is quite certain that if the plaintiff were seeking to avoid his agreement on this ground we would be disposed to hold against him. And if the contract be binding as to one of the parties, it is binding as to both. The defendant's offer was accepted absolutely, without condition, and this resulted in an executory contract, with mutuality of obligation and remedy. *Howell v. Pate,* 181 N. C., 117, and cases there cited.

The difficulty in the instant case arises out of the failure of the parties to distinguish between a condition which goes to the making of the contract and a suggestion relating only to its ultimate performance or execution. Of course, to consummate any kind of a contract there must be a meeting of the minds upon a given subject. An unaccepted offer is not a contract; and, as stated in a number of cases, an acceptance to be effectual must be identical with the offer and unconditional. 13 C. J., 281. But in order for this subsequently intended direction or suggestion to invalidate the acceptance, it should amount to a qualification or condition imposed as a part of the acceptance itself. In other words, it must be construed in the case at bar as a qualified acceptance to the effect that "I will accept your offer; provided you attach stock to draft and draw on me here in Greensboro and advise me so that I can be looking out for same." It will be readily conceded, without debate, that if this latter meaning be the reasonable and natural interpretation of plaintiff's letter dated 27 March, then there was no contract, and the defendant's contention, based upon this assumption, is entirely correct. But, on the other hand, if a contrary purpose were intended, as apparently and evidently it was, and the parties so understood it, we must give effect to the most essential and controlling element of all executory contracts, to wit, the real understanding and intention of the parties. The suggestion or direction made by plaintiff to draw draft with stock attached was not an unusual or unexpected method by which the parties might reasonably have contemplated carrying out the contract; and this lends color to the conclusion that a compliance with the plaintiff's wish, hope, or expressed request, "just draw on me here with stock attached," was not intended as a condition precedent to his acceptance of the defendant's offer. It is further conceded that the result would have been otherwise had this suggestion not been accompanied by a declaration of unqualified and unconditional acceptance. 39 Cyc., 1199, and cases cited in note.

There is no effort to circumvent or deny the well settled principle that an offer must be accepted in its exact terms in order that a contract

should arise therefrom, and any attempt to impose new conditions or terms in the acceptance, however slight, will ordinarily deprive it of any efficacy. *Krentzer v. Lynch,* 122 Wis., 474. But where the letter of acceptance contains a mere suggestion, or request, that payment be made in a certain way, and such request is not in form of a condition attached to the acceptance, it does not amount to an attempt to vary the terms of the offer to sell, and will not defeat an action in proper instances for specific performance, or one for a breach of the contract. *Curtis Land Co. v. Interior Land Co.,* 137 Wis., 341; *Turner v. McCormick,* 56 W. Va., 151.

In the last cited case, the Supreme Court of West Virginia makes the following general observations pertinent to the subject now in hand: "If a man says, 'I accept your offer,' that makes a contract. It assents to all the terms of the offer. What more is necessary? There is a complete *aggregatio mentium.* The acceptance conforms to the offer in every particular. How can a mere request relating not to the making of the contract but to its performance be deemed to change it? Would the acceptor be permitted to excuse himself from performance on the ground of such request? No precedent of that kind has been found. They are all cases in which the proposer, desiring to escape from the consequences of his offer, because somebody else has proposed a higher price than the first asked, seeks to repudiate the transaction and sell to the other party. Property rights are sacred, and should be well guarded by the law; but, when a man has deliberately made a fair contract of sale, he ought not to be permitted to avoid it on some flimsy pretext in order to avail himself of a better bargain. Time and place of payment, when not mentioned in an accepted offer, are fixed by law, and are matters of performance, carrying out the contract, a thing wholly distinct and separate from the making of the agreement. If, contemporaneously with or subsequent to the making of the contract, either party suggest, request, or propose a time, place, or mode of performance different from that agreed upon, that does not of itself effect such change, nor does it cause a breach, giving right of action or rescission to the other party. *Swinger v. Hayman,* 48 S. E., 839."

In *Skinner v. Stone,* 222 S. W., 360, a case practically on all-fours with the one at bar, the Supreme Court of Arkansas holds (as condensed and stated in the syllabus): "A suggestion in the acceptance of an offer to sell real estate that the purchaser will take care of draft attached to deed sent to a specified bank does not make that method of payment a condition which will avoid the contract if not accepted, but the purchaser must be given the opportunity to pay in money if the seller require it."

In the note following this case, published in 11 A. L. R., 811, the reporter cites two of our own decisions in support of the same position, to wit, *Hughes v. Knott,* 138 N. C., 105, and *Blalock v. Clark,* 137 N. C., 140.

The defendant relies on the case of *Hall v. Jones,* 164 N. C., 199, but we think there is a marked distinction between the facts of that case and those here presented. There the plaintiff Hall annexed to his acceptance the condition that the trade be consummated in fifteen or twenty days thereafter, and asked for a ratification of this change by the 'defendant Jones. This was not an acceptance in the terms of the offer; and, therefore, amounted to a rejection of it. *Minn. & St. L. R. Co. v. Columbus Roller Mill Co., supra; National Bank v. Hall,* 101 U. S., 43.

Our attention has been called to a number of cases in other jurisdictions, seemingly in support of a different position, but we think the conclusions we have reached, and stated above, is more in keeping with the real purpose and intention of the parties; and it is universally conceded that this should be the guiding star of construction in every case. See 39 Cyc., 1197, and cases collected in note.

Defendant further contends that the plaintiff should not be permitted to maintain this suit because, at the time in question, he was a stockholder and director in the Jefferson Standard Life Insurance Company, and, therefore, under the duty of disclosing to the defendant whatever information he may have had regarding the value of this stock.

There is a sharp conflict in the authorities elsewhere over the question as to whether the relations between a director or officer of a corporation, on the one hand, and shareholders, on the other, are not of such a fiduciary relation as to make it the duty of the former to disclose the knowledge which he possesses affecting the value of the stock before purchasing same from a shareholder. An interesting and valuable discussion of this subject will be found in 14 A. C. J., 128; *Shaw v. Cole Mfg. Co.,* 132 Tenn., 210; L. R. A., 1916 B, 706, and note; *Dawson v. Nat. Life Ins. Co.,* 157 N. W., 929; L. R. A., 1916 E, 878; *Strong v. Repide,* 213 U. S., 419; 53 L. Ed., 853. And in our own reports, see *Besseliew v. Brown,* 177 N. C., 65, and cases there cited, especially *McIver v. Hardware Co.,* 144 N. C., 478. But we do not think the facts in the instant case call for a decision of this question at the present time. There is no evidence on the record tending to show that the defendant had any less knowledge of the company's business, or the value of the stock, than the plaintiff. Hence, it does not now appear that any harm has resulted from this alleged circumstance, even if it be open to the defendant.

The judgment of nonsuit will be set aside, and the cause remanded for a new trial.

Reversed.

CLARK, C. J., dissenting: On Wednesday, 24 March, 1920, the plaintiff, who resided at Greensboro, N. C., inquired by letter of the defendant, who resided at Smithfield, N. C., if he had any Jefferson Standard Life Insurance Company stock for sale, and if so, to name his lowest price. On Friday, 26th, defendant replied by letter that he had 50 shares of said stock, for which he would take $10,000. On Saturday, 27 March, the plaintiff wrote the defendant that he accepted his offer, adding, "Just draw on me here at Greensboro with your Jefferson Standard stock attached to the draft, and I will honor the same. Please advise me that you have drawn, so I will be looking out for the draft."

On Monday, 29 March, the defendant replied that he had disposed of the stock, whereupon, on 30 March, the plaintiff wired the defendant insisting on the delivery of the stock. This constitutes the entire correspondence between the parties with respect to the sale of the stock except the subsequent letter from the defendant of 21 April, 1920, which the defendant wrote explaining why he did not accept the plaintiff's offer to draw on him, and had sold the stock in Smithfield for cash.

21 APRIL, 1920.

MR. P. C. RUCKER, Greensboro, N. C.

DEAR SIR:—Of course you understand that I offered you the stock at $10,000 cash in Smithfield. You have never offered me any cash for my stock, but proposed that I draw on you through some Greensboro bank. You also stated that I might notify you a few days ahead of draft, so that you could arrange with the bank to pay draft in case of your absence. In your first letter you referred to my stock as insignificant in quantity. In your second letter you stated that my price was above the market and rather more than you had ever known any to bring. You might have wired or called me over the telephone. Your attitude and expressions led me to believe that you were indifferent. I had the opportunity on Saturday, and again on Monday following our correspondence, to sell the stock for cash, which I did.

I am very sorry that you are disappointed, but I think that you slept upon your opportunity. You should have called me over phone or wired. Yours truly,

W. M. SANDERS.

The court held that the letter of the plaintiff of 27 March was not an unconditional acceptance of the defendant's offer in his letter of 26 March, and directed a nonsuit.

The alleged contract being entirely in writing, it was a matter of law for the court to determine whether the correspondence constituted a contract or not. *Spragins v. White,* 108 N. C., 449; *Festerman v. Parker,* 32 N. C., 474; *Young v. Jeffreys,* 20 N. C., 357.

"It is familiar learning that to make a valid sale the acceptance must be in the terms of the offer. 7 A. & E., 125. No special formalities are required, but the offer and acceptance must agree. The buyer has no right to attach any conditions if he proposes to hold the seller upon the original offer." *Hall v. Jones,* 164 N. C., 199.

The offer of the defendant, in letter of 26 March, acknowledging the receipt of the plaintiff's offer to purchase his Jefferson Standard Life Insurance Company stock, says: "I will take $10,000 for it." The plaintiff's answer, on 27 March, to this offer says: "Regarding your by the earliest opportunity have paid his creditor the $10,000 in cash at while this is the highest price I have heard of, I accept it." If the reply had stopped with these words the two minds would have met and the plaintiff would have become the debtor of the defendant, and should by the earliest opportunity have paid his creditor for the $10,000 at his home in Smithfield. But the plaintiff added a material condition to his acceptance by saying: "Just draw on me here at Greensboro with your Jefferson Standard Company stock attached to the draft, and I will honor the same. Please advise me that you have drawn, so I will be looking out for the draft."

This was not an unconditional acceptance, but a material variance. It is true the seller might have complied with this variance, but it is also true that his terms not having been accepted, which clearly contemplated the payment in cash to him, in the prompt and regular course of dealings, at Smithfield, he could disregard it and accept payment of cash at his home from another party which was made him after the receipt of said conditional acceptance of the plaintiff.

This matter of offer and acceptance in dealings of this kind are of hourly occurrence throughout the country, and it is of the greatest importance that the settled law that the acceptance of an offer must be unconditional shall be kept unchanged. In 13 C. J., 281, the law is thus fully and admirably stated with copious citations in the notes, "An acceptance to be effectual must be *identical with the offer and unconditional.* Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement. This is true, for example, where an acceptance varies from the offer as to time of performance, *place of performance,* price, quantity, quality, and other like cases. A promise to give an offer consideration cannot be regarded as an acceptance, nor can a statement that the offeree is *prepared to make arrangements on the terms named.*" If an offer is accepted as made, the acceptance is not conditional.

It is clear from this correspondence that the offer of the defendant meant that he would take $10,000 cash, payable forthwith in Smithfield. The reply of the plaintiff varied this by proposing to make payment to the seller in Greensboro, which was not according to the terms of his offer, but a material variance.

If the seller had complied with the proposed condition, he would have made the bank in Greensboro his agent to collect. There would, of course, have been the risk of the check sent by said bank to the seller being protested, or lost in the mails, or if remitted in cash there would have been danger of theft by the employees of the express company or loss by collision or by train robbers. It is true that these risks might be slight, but they were risks which under the terms of the defendant's offer should have been borne by the plaintiff, whose duty it was to safely convey the $10,000 and pay it over to the seller at his home in Smithfield within the prompt and ordinary course of transmission and payment.

Among the many notes to the above citation from 13 C. J., 281, are the following: "Note 32: When the offer is to buy a horse and the offeree accepts (if he will come for it) there is no agreement." *Fenno v. Weston,* 31 Vermont, 345; *Baker v. Holt,* 56 Wisconsin, 100. Also, "Where the offer of property for sale says nothing about the place of payment and the acceptor specifies that it shall be made at his residence, there is no agreement, for the offer entitles the seller to payment at his place of residence." See 39 Cyc., 1197, with other citations.

That is exactly the case here. The place of payment not being named, it was, of course, to be made at the residence of the seller in Smithfield, and the condition annexed by the buyer that he would make payment in Greensboro, and that notice should be given him so that he might be prepared to make payment was a material difference as to which the two minds did not meet, and his Honor properly nonsuited the plaintiff upon that ground. There are occasions when the parties are farther apart than Greensboro and Smithfield. For instance, where the offerer might be in New York and the offeree in San Francisco or New Orleans or London. In such cases the variation by reason of the greater distance and delay would emphasize the variation from the proposal of the defendant and the acceptance of the buyer, but the principle of law involved is the same. It is so important and so universally settled that it should not be made uncertain.

In 6 R. C. L., 608, the same uniform ruling of the Court is thus summed up: "There must be no variance between the acceptance and the offer. Accordingly, a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation unless the party who made the original offer renews it or assents to the modification suggested. The other party

having once rejected the offer, cannot afterwards revive it by attempting an acceptance of it. The acceptance must be unequivocal and unconditional. If to the acceptance of a proposal any condition be affixed by the party to whom the offer is made, or any modification or change in the offer be made or requested, there is a rejection of the offer. Having in effect rejected the offer by its conditional acceptance, the offeree cannot subsequently bind the offerer by an unconditional acceptance. The offerer may, of course, assent to the terms imposed by the offeree, and such assent may be inferred from the fact that the parties conducted business under the conditional acceptance," citing many cases. In this instance the defendant, upon a fair construction of the correspondence, offered to take $10,000 cash for his stock, payable to him in Smithfield. The offeree, the plaintiff, varied this by offering to pay in Greensboro to the agent of the offerer. If the seller had assented to this variation the contract would have been closed, but the seller was not required to take notice of an acceptance which was conditional. Being offered by another payment in cash to himself in Smithfield, he chose to accept, and this he had a right to do.

In 39 Cyc., 1197, the same principle is laid down as in the above quotations from C. J. and R. C. L., with numerous citations of authorities. In note 98 thereto it is said: "If no place is specified for payment, it is implied that it is to be made at the residence of the vendor or his agent, and an acceptance fixing a different place is bad as a variance from the offer," citing a very long list of cases as a statement of the uniform ruling of the courts. The acceptance of the offeree in this case in effect proposing to pay in Greensboro, at the risk of the seller for the transmission of the payment to the vendor, was not the unconditional acceptance which the law requires in such transactions.

Benjamin on Sales (7 ed.), sec. 39, says: "The assent must, in order to constitute a valid contract, be mutual, and intended to bind both sides. It must also coexist at the same moment of time. A mere proposal by one man obviously constitutes no bargain of itself. It must be accepted by another, and this acceptance must be *unconditional*. If a condition be affixed by the party to whom the offer is made, or any modification or change in the offer be requested, this constitutes in law a rejection of the offer and a new proposal, equally ineffectual to complete the contract until assented to by the first proposer."

While in this case the offer of the defendant does not use the word "cash," it is apparent from the correspondence and the course of dealing that this was the intent of the parties. In 1 Page on Contracts, 77, sec. 46, the author says: "If the offer of sale does not state the terms of payment, cash payment is implied. Hence, an acceptance which attempts to secure even a short period of credit, does not make a con-

tract." Under the ruling in *Hall v. Jones, supra,* the defendant was not required, under the terms of his offer, to incur the expense and risks and delay in sending his stock to some bank at Greensboro to be paid at the pleasure and convenience of the plaintiff. It was incumbent upon the plaintiff to accept or reject the offer unconditionally, and if he accepted he should have sent the cash, or what would be accepted as cash, by the earliest conveyance to the seller at his home in Smithfield. This proposition is held the settled law as stated in the above and other citations. Among other cases in point fully supporting these contentions of the defendant in this case are *Sawyer v. Brossart,* 67 Iowa, 678; 56 American Reports, 372; *Iron Co. v. Meade,* 21 Wisconsin, 474; 94 American Decisions, 557; *Baker v. Holt,* 56 Wisconsin, 100; 1 Parsons on Contracts (6 ed.), 475; 1 Page on Contracts, 75, citing many cases, among them, *Gilbert v. Baxter,* 71 Iowa, 327. It is believed there are none to the contrary.

In *Iron Co. v. Meade,* 21 Wisconsin, 474; *S. c.,* 94 Am. Dec., 557, it is said: "Acceptance of an offer to sell land, but fixing a different place for the delivery of the deed is invalid. If the plaintiff had simply said: 'I accept your proposition,' then there would have been an agreement to sell the land for cash. The payment of the money and the delivery of the deed in such cases are concurrent acts."

The defendant's offer was to accept $10,000 cash in Smithfield. The plaintiff accepted it upon condition that he was to pay to defendant's agent in Greensboro, thus throwing upon the defendant the expense and risk of transmitting the stock, $10,000 worth to Greensboro and the expense and risk of the transmission back to him of the $10,000 in cash or by check to be turned into cash upon presentation by him to the bank in Smithfield and payment thereof. This was not the offer that was made by the defendant, but a very material variation. It is, on its face, neither an inquiry nor a mere suggestion of the mode of payment, but the statement of the conditions upon which the plaintiff would accept the defendant's offer.

We are not inadvertent that the defense was also set up that the plaintiff was an officer of the company and informed as to the value of its stock, whereas, the defendant was not, but this question does not arise upon the nonsuit, and we think the principle of commercial law involved is of sufficient importance to justify the above citation of authorities, which should be conclusive of the correctness of the nonsuit.