## STANDARD SAND & GRAVEL CO. v. McCLAY AND FIDELITY & CASUALTY CO.

### (Filed 3 March, 1926.)

**1. Contracts—Offer and Acceptance.**

In order to create a contract of sale of personal property, the acceptance of the offer must be identical therewith, imposing no new element into the transaction that would require an acceptance by the bargainor.

**2. Same.**

Where the price of sand and gravel have been agreed upon, it is an unconditional acceptance by the purchaser, when he has written can you ship to a certain point; reply that we think we can do so at or before a specified time; answer giving quantity, etc., and requesting shipment at time prior to that stated, if possible, followed by delivery to the railroad company: *Held*, sufficient evidence of the unconditional acceptance of the offer to sell.

**3. Contracts—Carbon Copies—Duplicate Originals—Vendor and Vendee —Carriers.**

A duplicate carbon of an original bill of lading, with sufficient evidence of identity, is regarded as a duplicate original of a contract of shipment, with a delivery to the carrier, and may be introduced in evidence without a previous notice to the opposing party, in an action by the vendor to recover the purchase price of the vendee, as evidence of delivery of the goods purchased.

**4. Contracts—Personal Property—Implied Warranty.**

In the sale of personal property, there is an implied warranty that the goods sold are reasonably suitable for the uses and purposes for which they were sold.

**5. Highways — Contracts — Materialmen — Rejection —Inspection—Evidence—Burden of Proof.**

Where a surety bond covers material furnished to a contractor to build a highway for the State Highway Commission, and liability is denied on the ground that it was refused by the Commission's engineer, it is a question for the jury to determine on conflicting evidence, whether the contractor has rejected the material before the engineer had been given an opportunity to inspect it.

**6. Highways—Materialmen—Principal and Surety—Contracts.**

Where the payment for material furnished for the building of a state highway is embraced by the surety bond of the contractor, it is not required that the material furnisher prove that it was used in the construction, it being required only that he show that it was furnished under contract with the contractor to build the highway, and that the contractor is liable for its payment. The analogy to the lien statutes, pointed out by *Brogden, J.*

CIVIL ACTION, tried before *Devin, J.,* November Term, 1925, of HARNETT.

The plaintiff instituted this action to recover from the defendant the sum of $833.23 for eleven cars of gravel and eight cars of sand, which the plaintiff alleged the defendant purchased for constructing Project No. 364-B, contract for which had been awarded by the State Highway Commission to the defendant. The defendant McClay denied that he had contracted to purchase said material for said project from the plaintiff, and notwithstanding the fact that no contract had been made, the plaintiff shipped certain material to him for use in said road construction, but that said material so shipped was rejected as unfit for the work by the resident engineer and bridge inspector for the State Highway Commission.

There was further evidence tending to show that the material so shipped was sold by the Atlantic Coast Line Railroad for demurrage charges and was never incorporated in the work.

The defendant McClay gave bond for the faithful performance of his contract with the State Highway Commission, said bond having been duly executed by the defendant, Fidelity and Casualty Company. The portion of the contract and bond defining the liability of the defendant Casualty Company is as follows: "Well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the contractor is liable." The defendant bonding company contends that by reason of the fact that none of said material was actually used by the contractor and incorporated in said work and was rejected and sold by the railroad company to other parties that, therefore, it was not liable in any event for said material.

The evidence disclosed that on 16 September, 1922, the defendant McClay wrote a letter to the plaintiff as follows: "I will want your company to ship sand and gravel to Raeford and also to this job 364-B. I surely would like for you if you can to ship me one or two cars of gravel and one of sand to Raeford right away, as my men are there and waiting. Please steal me one or two to help me out. Will soon be ready here. Now I am going to depend on you. Hoping to see you soon, I am yours, etc." On 16 November, 1922, the defendant McClay wrote the plaintiff as follows: "Can you ship me sand and gravel to Verona and Jacksonville? If so, let me hear from you. I need a good deal at these plants."

On 20 November plaintiff wrote the defendant McClay: "I think we can handle the Verona order O.K., but could not promise you shipments before the first of the month on gravel, but can ship the sand at any time. Please advise if this is satisfactory and the approximate quantities you will want shipped to Verona." In response to this letter,

the defendant wrote the plaintiff on 22 November, 1922, answering the same and using the following language: "I received your letter today. I surely wish you could send me at least two cars of gravel to Jacksonville right away, as I have two culverts I want to get in before the end of December, and I want you to ship to Verona just as soon as you can. If you can see your way to ship before the first of the month, I wish you would do so. . . . I will need about 1100 cubic yards of gravel at Verona and Jacksonville and about 450 cubic yards of sand." There was further evidence on behalf of the plaintiff tending to show that the defendant McClay had given an order for the sand and gravel prior to the time the letter was written with reference to making shipments, and that the order had been accepted by the plaintiff.

On the question of refusal of a State engineer to accept the material shipped by the plaintiff as suitable for project 364-B, there was evidence from the plant inspector of the State Highway Commission, whose duty it was to inspect the materials sent out by plaintiff that the materials shipped by plaintiff met the requirements of the State Highway Commission. There was also evidence to the effect that the sand and gravel shipped by the plaintiff was not up to specifications.

The resident engineer for the State Highway Commission, in charge of this particular project, testified as follows: "I never had a chance to permit the use of this material because Mr. McClay turned it down after my inspection before I had an opportunity to turn it down after taking samples. . . . I had instructions from Mr. Hutchinson, head of the Inspection Bureau of the State Highway Commission, not to turn it down if it had inspection cards on it, but I also had further instructions to send samples to the testing department. . . . I did not send it because it was turned down before I did send it. Mr. McClay did not wait to get it tested, but refused it himself."

The issues and answers thereto were as follows: (1) Is the defendant A. W. McClay indebted to the plaintiff, and if so, in what amount? A. $833.23. (2) Is the defendant Fidelity and Casualty Company of New York liable thereon as surety? A. Yes.

Judgment was entered upon the verdict and the defendant appealed.

*Charles Ross for plaintiff.*
*I. M. Bailey and Marshall T. Spears for defendants.*

BROGDEN, J. Three questions are presented for determination: (1) Was there sufficient evidence to establish a contract of sale and delivery of materials? (2) Was the defendant relieved of liability by reason of rejection of said material by the resident engineer of the State Highway Commission? (3) Is the defendant Casualty Company

liable under its bond for said materials, it being admitted that they were not actually incorporated in the work?

In reference to the first question presented, it is established law that in order to constitute a binding contract the offer and acceptance must be in identical terms and unequivocal. The rule is thus stated by *Stacy, J.,* in *Rucker v. Sanders,* 182 N. C., 609: "There is no effort to circumvent or deny the well settled principle that an offer must be accepted in its exact terms in order that a contract should arise therefrom, and any attempt to impose new conditions or terms in the acceptance, however slight, will ordinarily deprive it of any efficacy." *Overall Co. v. Holmes,* 186 N. C., 428; *Refining Corporation v. Sanders,* 190 N. C., 203.

Applying this rule to the facts as disclosed by the record, it appears that on 16 November the defendant wrote the plaintiff, "Can you ship me sand and gravel to Verona and Jacksonville?" On 20 November the plaintiff wrote defendant, "I think we can handle the Verona order O.K., but could not promise you shipment before the first of the month on gravel, but can ship the sand at any time. Please advise if this is satisfactory and the approximate quantities you would want shipped to Verona." In response to that letter, on 22 November, the defendant wrote the plaintiff, "I want you to ship to Verona just as soon as you can. If you can see your way to ship before the first of the month I wish you would do so. I will need about 1100 cubic yards of gravel and about 450 cubic yards of sand." This language, by fair deduction, compels the conclusion that there was such an offer and acceptance thereof as the law contemplates, and, therefore, a binding contract. While the price for the material was not mentioned in the correspondence, it appears from the record that the plaintiff had quoted the defendant gravel and sand for shipment to Onslow County at the price of $1.50 on the inch and a half gravel per ton and fifty cents on sand.

The plaintiff offered in evidence twenty-one way bills issued by the railroad company for thirteen cars of gravel and eight cars of sand, showing shipment of material to the defendant. The defendant objected to these documents for the reason that they were carbon copies of the originals, and that the originals were in the possession of the railroad. The evidence was admitted over the objection of the defendant, and the ruling of the trial judge presents the question of admissibility of carbon copies of the bills of lading where no notice was given to produce the original and where the original was in the possession of the railroad company.

There was evidence that the carbon copies were made at the same time and by the same mechanical operation as the originals. In *International Harvester Co. of America v. Elfstrom,* 112 N. W., 252, it is

said: "It is well settled that, where a writing is executed in duplicate or multiplicate, each of the parts is the writing which is to be proved, because by the act of the parties each is made as much the legal act as the other." In *Chesapeake Ry. Co. v. Stock,* 51 S. E., 161, the Court held: "That a carbon copy made at the same time and by the same impression of type is to be regarded as a duplicate original and admissible in evidence without notice to produce the other original." *Federal Union Surety Co. v. Ind. Lumber and Mfg. Co.,* 95 N. E., 1104; 22 C. J., 1024; *McLendon v. Ebbs,* 173 N. C., 605; *Ins. Co. v. R. R.,* 138 N. C., 42; *Beard v. R. R.,* 143 N. C., 142.

We conclude, therefore, that his Honor was correct in admitting the evidence.

The second question involves the rejection of the material by the resident engineer of the State Highway Commission. Upon this aspect of the case the judge charged the jury in part: "If you are satisfied from the evidence and by the greater weight thereof that the materials were contracted for by the defendant, and were loaded on the car and shipped by the plaintiff in accordance with the contract, and the materials were the kind and quality contracted for and suitable for the purpose for which they were ordered, and the defendant failed to pay therefor, the plaintiff would be entitled to recover the contract price therefor, provided the plaintiff had received nothing from the sale of the material." This charge is a correct interpretation of the law applicable to the facts. In sales of personal property where there is no warranty of quality, it is nevertheless the duty of the seller to furnish property reasonably suitable for the uses and purposes for which the property was intended. *Ashford v. Shrader,* 167 N. C., 45; *Furniture Co. v. Mfg. Co.,* 169 N. C., 41; *Farquhar Co. v. Hardware Co.,* 174 N. C., 369. It also appeared from the testimony of the resident engineer of the State Highway Commission that the defendant did not wait to get the material tested, but refused it himself, and hence this aspect of the case is immaterial.

In reference to the third question, it appears from the testimony that the material was sold at the instance of the Atlantic Coast Line Railroad Company, and, therefore, not actually incorporated in the work. The pertinent provision of the bond obligated the bondsman *to truly pay every person furnishing labor and material for all labor and materials for which the contractor is liable.*

The jury, by its verdict, under proper instruction from the court, found that the defendant made a valid contract for the material, and that in pursuance thereof material reasonably fit and suitable for the contemplated work was delivered to a common carrier consigned to the defendant. The material was therefore "furnished" to the contractor,

and, hence of necessity the contractor was liable for the purchase price. Therefore, the contractor being liable, the bond, by its express terms, guaranteed payment.

Counsel, in able briefs, have called our attention to no case in this State determining the question of liability of a bondsman for material not actually incorporated in the work. In construing lien statutes, the courts are divided. Some hold that no lien can be acquired by a materialman unless the material is actually incorporated in the structure. These are "strict constructions." The more liberal view is that, if material, fit and proper, is delivered to the owner, the materialman having done all that he is required to do and all that he can do, is entitled to a lien whether the material is actually used or not. The divergence of judicial decision is classified in an exhaustive note in 13 A. & E. Anno. Cas., p. 13. The liberal interpretation of such statutes was adopted in North Carolina in *Womble v. Leach,* 83 N. C., 86, which held that a landlord, furnishing supplies was not bound to see that the supplies to the tenant were actually used on his farm.

In the present case, however, we are not construing a lien statute but a contract. *Town of Cornelius v. Lampton,* 189 N. C., 718. As stated by *Justice Clarkson* in *Aderholt v. Condon,* 189 N. C., 755: "The bond is to pay for the work and material for which the contractor—Costello Brothers-Condon & Condon—is liable."

In lien statutes the lien is the security for the laborer and the materialman. In cases like the case now under consideration where no lien can be secured, the bond is the security for laborers and materialman. In *Crane v. U. S. Fidelity and Guaranty Co.,* 132 Pac., 872, the contract provided for the construction of an annex to a public school building in the city of Seattle. The contractor bought material, part of which was not used in the structure. The Court held that the liability of a contractor for materials ordered and supplied for the work, but not actually used therein, is within the contractor's bond conditioned on payment of materialmen furnishing materials for the work, the contractor not reserving the right to return any material not used. *Trammel v. Mount,* 68 Texas, 213. Indeed, if any other rule of liability should be applied, materialmen would be compelled to stand guard over materials furnished and compel the contractor to incorporate them in the work in order to collect the purchase price. The logical result of such a rule would be to undermine and destroy business confidence and security.

By reason of the importance of the principles involved, we have given the record careful consideration and are convinced that the merits of the controversy have been determined in accordance with the law.

Affirmed.